(752 P.2d 705)

No. 60,520
No. 60,521

In the Interest of A.S., M.S., and A.L.S, Minor Children Under the Age of Eighteen Years.

Opinion filed March 31, 1988.

*William R. Griffith,* of Wichita, and *Jon S. Womack,* of Wichita, for the appellants.

*Randy M. Barker,* of Social and Rehabilitation Services, of Wichita, for the appellee.

Before ABBOTT, C.J., REES and RULON, JJ.

ABBOTT, C.J.: The natural parents of A.L.S., A.S., and M.S. appeal from a judgment terminating their parental rights. They challenge the sufficiency of the evidence and claim the doctrine of res judicata barred the court from considering evidence concerning parental skills and parent-child relationships which had previously been considered and found inadequate to sever parental rights.

In February of 1980, a petition was filed alleging A.L.S. and her brother, J.S., to be deprived children. The parental rights to J.S. were severed in 1984, and he has been adopted. (Since J.S. is not subject to this appeal, he will not be referred to again, although he was involved in the proceedings until late 1984.) The parents stipulated that A.L.S. was a deprived child, and her custody was placed with the Department of Social and Rehabilitation Services (SRS) which, during part of the time, placed A.L.S. in the parental home.

In 1984, SRS attempted to have the parental rights to A.L.S. severed, alleging abuse, neglect, and that the family had "a long history of instability in terms of residence and employment as well as marital discord." The trial court found the evidence was not clear and convincing as to A.L.S., and relieved SRS of custody. However, the trial court did not discharge A.L.S. from its jurisdiction.

M.S. was born in 1982 and A.S. in 1983. In September 1985, they were also alleged to be children in need of care, and A.L.S., A.S., and M.S. were placed in the temporary custody of the SRS in October. Reintegration plans were drawn and unsuccessful attempts were made to reintegrate the children into the home. On December 3, 1986, the parental rights to the children were severed, and this appeal followed.

## I. Sufficiency of the Evidence

The parents argue there is not substantial competent evidence of a clear and convincing nature in the record to support findings of parental unfitness and that the parents' conduct is unlikely to change in the foreseeable future.

The applicable law and our scope of review have been set forth by the appellate courts of this state on many occasions and

need not be repeated. (See, *e.g.*, *In re J.G.*, 12 Kan. App. 2d 44, 734 P.2d 1195 [1987]; K.S.A. 38-1583[b], and 38-1583[c] and [e] where, as in this case, the parents do not have custody.)

The trial court ordered the father to comply with a reintegration plan which required his attendance and completion of parenting classes, completion of a psychological evaluation, completion of a drug and alcohol evaluation, and therapy, as recommended, until the therapist ended his treatment. The social worker discussed the reintegration plan with the father several times, and each time he told her he was not going to comply with the plan. The father did not complete a drug and alcohol evaluation, did not have a psychological evaluation performed, and did not attend parenting classes. He suggests in his brief that his noncompliance with these provisions of the reintegration plan should be downplayed because they may not have been appropriate in the beginning. The father's failure to comply with the plan shows a failure to adjust his conduct to meet the needs of the children. The provisions of the plan with which he refused to comply were formulated with the best interests of the children in mind, and his belief that he did not need help in those areas is not an acceptable excuse for noncompliance. This, coupled with his refusal to accept the services offered to him by SRS, shows a total lack of concern for the children.

Although the father was ordered to maintain regular weekly visits with his children, he visited with them only once between November 22, 1985, and February 28, 1986. He then visited fairly regularly on a weekly basis up through June 6, 1986, at which time he ceased visitation up to and including December 3, 1986, when the parental rights termination hearings were concluded. The trial court found that the father failed to provide any care or nurturance for any of the three children, except for disruptively inconsistent visitation, and that he has emotionally and physically abandoned all three children as a functioning parent. Emotional neglect of the children is a factor the court can consider in determining whether to terminate parental rights. It is also significant that the father elected not to be present on the last three days of the hearings.

A reintegration plan was also developed and ordered for the mother. She complied with the majority of the plan, but she did

not maintain a stable residence. When the social worker was assigned the case in September of 1985, the mother was living in the county jail. From September 27, 1985, to June 24, 1986, she lived in at least nine different residences, all of them unstable. For example, on May 12, 1986, the mother informed the social worker that she was living with her boyfriend. On June 16, 1986, she reported that she was residing with her boyfriend's step-mother because her boyfriend's wife had come back to him. She moved back in with her boyfriend on June 24, 1986. Her boyfriend's wife was still there, but later left.

Under K.S.A. 38-1583(b)(1), the trial court shall consider a parent's "[e]motional illness, mental illness, mental deficiency or physical disability . . . of such duration or nature as to render the parent unlikely to care for the ongoing physical, mental and emotional needs of the child."

The therapist, who had been seeing the mother on a regular basis since February 26, 1985, testified that the mother operated on the emotional level of an adolescent; that when the mother became extremely focused in her relationships with men she was very unfocused on the needs of her child (referring to another child not subject to this appeal). For example, the mother faked a suicide attempt to prevent her boyfriend from going back to his wife. The therapist testified the mother was so engrossed in the manipulation of her boyfriend that she temporarily forgot that her child was unattended. The mother has not made progress with her emotional immaturity. The therapist felt the mother was unable to accept responsibility for her acts and was incapable of providing a stable home environment or emotional stability for her children. From July 22 to September 24, 1986, the mother did not visit her children at all. From September 24, 1986, until the end of November, she visited the children on a fairly regular basis, although she did miss some visits.

There is substantial competent evidence in the record to support the trial court's decision that the mother was unfit to parent and that her parental rights should be terminated.

The mother also argues that the court erred in making the following finding:

"7. . . . the court was faced with both parents refusing to sign reintegration plans and made that order of December 12, 1985, for each parent to follow

reintegration plans' previously established by SRS for each as the court's intervention to try to reintegrate the children with their respective parents."

While her argument is not clear on this point, the mother apparently believes that this finding shows the trial court felt she had not complied with the order. This is not correct. In fact, the trial court specifically found that the mother had worked at complying with the order and had partially succeeded. The court ordered each parent to comply with the reintegration plan. The record is clear that the mother did not sign the reintegration plan, and the father was not interested in the plan and would not sign it. There is nothing in finding No. 7 which can be construed as error.

## II. Res Judicata

The parents argue the doctrine of res judicata bars consideration of any evidence prior to November 16, 1984, which was the date the trial court found the evidence was not clear and convincing in support of the motion for termination of parental rights as to A.L.S. The res judicata issue applies only in the case of A.L.S.

The parents also argue that the doctrine of res judicata barred the trial court from considering any evidence prior to June 24, 1985 (the date the trial court ordered the custody of A.L.S. be returned to her parents). This argument was not raised in the trial court. Thus, we will not consider it. *Lostutter v. Estate of Larkin,* 235 Kan. 154, Syl. ¶ 6, 679 P.2d 181 (1984).

SRS contends the issue of res judicata is moot because virtually all of the substantive testimony presented at the hearing concerned events and actions of the mother and father after November 16, 1984. A review of the transcripts shows this is substantially correct. All of the witnesses came in contact with the mother, the father, and/or the children after November 16, 1984, and testified about events and actions of the parents subsequent to that time. SRS contends the only evidence considered by the trial court that was prior to November 16, 1984, was the court's file of the case. The trial court found that it could, and properly should, take judicial notice of the contents of the court file. A court may take judicial notice of its own court file. K.S.A. 60-409(b)(4); K.S.A. 38-1506(a)(1); see *State v. Lowe,* 238 Kan. 755, 759, 715 P.2d 404 (1986).

Our examination of the record reveals the journal entry contains findings by the trial court which indicate that it may have considered some evidence of the parents' conditions and conduct prior to November 16, 1984. Because of these findings, the applicability of res judicata, in relation to termination of parental rights, is properly before us.

Other jurisdictions have considered this question. In *State ex rel Juv. Dept. v. Newman*, 49 Or. App. 221, 619 P.2d 901 (1980), a father appealed from an order terminating his parental rights to his children. One of the father's contentions was that the State was estopped from terminating his parental rights because it had unsuccessfully petitioned for termination in an earlier proceeding. In support of his position, the father argued that all the facts upon which the State relied were known to it at the time of the earlier termination proceeding, with the exception of his conviction and incarceration in another state. While acknowledging that any factual basis for relief the plaintiff asserted in the first case should not be the basis for relief in a second case, the Oregon Court of Appeals noted that, in the case before them, there was at least one new substantial material fact: the father's conviction and sentence, which had occurred between the first and second termination proceedings. The father still argued res judicata or collateral estoppel applied because, in Oregon, incarceration alone was insufficient to warrant termination, and because the other facts the State relied upon were, or could have been, considered in the first hearing and could not be readjudicated. The Court of Appeals stated:

"Although we do not accept the father's argument, we do not go so far as to hold that collateral estoppel may never preclude relitigation of a fact in controversy in the first termination proceeding with respect to which there has been a final factual finding. As in other litigation, there must come a time when factual disputes reach a state of final repose—sound public policy demands it. But we need not pursue the extent to which collateral estoppel may be applicable to this type of proceeding because the father here takes the extreme view that if the second proceeding may be maintained at all, *only* facts arising subsequent to the first proceeding may be considered in the second one, and that position we reject.

"Termination of parental rights proceedings generally arise out of a continuing and cumulative set of circumstances, in which the child is within the juvenile

court's jurisdiction and, often, is subject to agency custody or supervision. An order *denying* a petition to terminate parental rights seldom leads directly to the termination of wardship or of agency involvement. It is one thing to say that such an order bars a second termination proceeding when there has been *no* change in the operative facts which led to the initiation of the first proceeding; it is very different—and clearly wrong—to contend that, if new substantial material facts come into existence which justify the filing of a new termination proceeding, evidence and facts which were or could have been considered in the earlier proceeding cannot be considered or reconsidered in the later one." 49 Or. App. at 225-26.

The Oregon court analogized the case to an Oregon Supreme Court case, *Greisamer v. Greisamer*, 276 Or. 397, 555 P.2d 28 (1976), where a father had appealed a child custody award to the mother in a dissolution proceeding when he had been awarded custody in the prior separation proceeding. The father contended the principle of res judicata prevented the court from considering any evidence of his conduct prior to the separation proceeding. The Oregon Appeals Court noted the Oregon Supreme Court had disagreed and had stated in *Greisamer*:

" '[T]he father's deficiencies existing at the time of the first decree if they are relevant to the inquiry must be put on the scale just as they were put on the scale in the first proceeding. It is apparent that the father was awarded custody in spite of his shortcomings only because the mother was not in a position economically at that time to do even as well as the father, and that if the mother had not been so handicapped the custody would have been awarded to her in order to serve the best interests of the two children. It is patent, then, that the evidence relating to the husband's custodial qualifications existing at the time of the first proceeding are an essential ingredient in the second proceeding in determining what would best serve the children's interests.

" 'This conclusion does not offend the policy underlying the principle of res judicata. This is not an instance where the plaintiff is seeking to readjudicate a question previously decided; plaintiff is asking only that facts previously considered but which are essential to decide an existing and new dispute, be used as evidence.' 276 Or. at 401." 49 Or. App. at 226-27.

In *People In Interest of J.R.*, 711 P.2d 701 (Colo. App. 1985), a mother, whose parental rights to her children were terminated, argued on appeal that the doctrine of res judicata barred the relitigation of claims between the State and herself because these claims were merged into a prior court order denying the State's petition to terminate her parental rights. The Colorado Court of Appeals disagreed, stating:

"Although the policy of limiting litigation is sound, that policy should not be

applied so as to deprive the state in its role as *parens patriae* from seeking a resolution which will best serve the interests of the children. [Citations omitted.]" 711 P.2d at 703.

The same issue was before the Supreme Court of Nebraska in *In re Interest of V.B. and Z.B.*, 220 Neb. 369, 370 N.W.2d 119 (1985). The Nebraska court, like the Oregon court, analogized parental rights termination cases to child custody cases. In child custody cases, the Nebraska Supreme Court had held that the doctrine of res judicata could not prevent a court, in a subsequent custody proceeding, from deciding what is best for the children at that time. The courts are to look at "changed circumstances" when the prior order is no longer in the best interest of children. The Nebraska Supreme Court stated:

"In determining whether a change of circumstances exists so as to modify a juvenile court's previous order to a decision terminating parental rights, the court can use the time period prior to the previous order in conjunction with the time period after the previous order to determine whether there is a requisite change of circumstances since the original disposition order. [Citation omitted.] When a second termination proceeding is not itself barred, the proof is not limited by res judicata or collateral estoppel principles to facts or evidence which was not considered in, or which came into being after, the first proceeding. *Matter of Newman*, 49 Or. App. 221, 619 P.2d 901 (1980)." 220 Neb. at 372.

The Connecticut Supreme Court, in the case of *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 318, 460 A.2d 1277 (1983), stated:

"The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. [Citations omitted.] Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. The doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies."

The progress, or lack of progress, of a parent or a child cannot be determined without a knowledge of the conditions that existed at the time the case commenced and the changes that occurred during the cause of action. The court, as well as the experts involved, must be free to examine all of the circumstances, evidence, prior facts, prior orders, and other relevant information in order to arrive at a correct conclusion. Here, the

trial court found that in 1984 the evidence was not clear and convincing that the parents were unfit, or that they would remain unfit for the foreseeable future. The case and the issue of unfitness remained open for future review by the trial court.

Future changes that would justify reviewing evidence considered in prior termination proceedings could be triggered by nothing more than a continued course of conduct, *i.e.*, a failure to change or to improve as a parent. We are satisfied that a change of circumstances occurred after November 16, 1984. Therefore, the trial court is allowed to consider the prior events and prior family history in this parental severance case.

Affirmed.