2003 OK CIV APP 69

**In the Matter of S.L., a deprived child.**

**State of Oklahoma, Plaintiff/Appellee,**

**v.**

**Lonnie Johnson and Donnetta LittleJohn, Defendants/Appellants.**

**No. 97,815.**

Court of Civil Appeals of Oklahoma, Division No. 2.

June 24, 2003.

Approved for Publication by Order July 30, 2003.

C. Wesley Lane II, District Attorney, Jane A. Brown, Assistant District Attorney, Oklahoma City, OK, for Plaintiff/Appellee.

Sherry J. Neal, Oklahoma City, OK, for Defendant/Appellant Lonnie Johnson.

Mary H. Tolbert, Crowe & Dunlevy, Oklahoma City, OK, and W. Ryan Hauser, Office of the Juvenile Public Defender, Oklahoma City, OK, for Child.

Opinion by JOE C. TAYLOR, Presiding Judge:

¶1 Father, Lonnie Johnson, appeals a judgment on a jury verdict terminating his parental rights to his minor child, S.L. The issues on appeal are (1) whether a prior judgment not to terminate Father's parental rights has preclusive effect which bars the present termination proceedings, (2) whether the verdict of termination based on 10 O.S. 2001 § 7006-1.1(A)(12), (15) is supported by sufficient evidence, (3) whether State could seek termination on the alternative grounds of incarceration and extended foster care placement, and (4) whether the trial court abused its discretion in granting the State of Oklahoma's (State's) motion in limine regarding evidence of a prior termination proceeding. Having reviewed the record and applicable law, we affirm the judgment of termination.

¶2 State filed a petition seeking termination of Father's parental rights to S.L. due to Father's incarceration, § 7006-1.1(A)(12), and because S.L. had been in foster care for 15 of the 22 months preceding the filing of the petition, § 7006-1.1(A)(15). Following a trial, the jury determined Father's rights should be terminated. Father appeals, arguing claim and/or issue preclusion, insufficiency of the evidence, and evidentiary error.[1]

## CLAIM AND ISSUE PRECLUSION

¶3 Father argues that the instant proceeding to terminate his parental rights is barred by the doctrines of claim preclusion (or res judicata) and issue preclusion (or collateral estoppel). S.L. was adjudicated deprived in 1997. State initially sought termination of Father's parental rights on the

---

1. State also sought termination of the parental rights of S.L.'s mother. The jury terminated her parental rights. Although Mother joined in the petition in error in this appeal, she did not file a brief on appeal. Therefore, we consider her appeal abandoned. *Osburn v. Bendix Home Systems, Inc.*, 1980 OK 86, ¶4 and n. 2, 613 P.2d 445, 448.

ground that he failed to correct the conditions that led to the deprived adjudication. In April 2000 a jury determined that Father's rights should not be terminated. At the time of this first trial, Father was incarcerated and S.L. had been in foster care for 15 of the preceding 22 months. Shortly after this first jury trial, the trial court ordered a new treatment plan, but held Father's compliance with the treatment plan in abeyance until his release from prison.

¶ 4    In October 2001 State filed an amended petition, again seeking termination of Father's parental rights. The amended petition sought termination due to Father's incarceration, § 7006–1.1(A)(12), and because S.L. had been in foster care for 15 of the preceding 22 months, § 7006–1.1(A)(15). Father argues that the jury's determination in the first trial that his rights should not be terminated has preclusive effect and bars any further proceedings. In particular, Father argues that, because he was incarcerated at the time of the first trial and S.L. had been in foster care for 15 of the 22 months preceding the first trial, State is precluded from raising these two grounds for termination in the current proceeding. In effect, Father argues that, when State first sought termination of his parental rights, it was required to allege all grounds of termination available to it at the time. We disagree.

¶ 5    Father's argument is based on the doctrines of claim and issue preclusion. The elements of claim preclusion are "1) an identity of subject matter, of the parties or their privies, of the capacity of the parties and of the cause of action; 2) the court which heard the original action must have been one of competent jurisdiction; and 3) the judgment rendered must have been a judgment on the merits of the case and not upon purely technical grounds." *Carris v. John R. Thomas & Assoc., P.C.*, 1995 OK 33, ¶ 10, 896 P.2d 522, 527. "Claim preclusion bars relitigation by parties or their privies of issues which either were or could have been litigated in a prior action which resulted in a prior judgment on the merits." *State ex rel. Moshe Tal v. City of Oklahoma City*, 2002 OK 97, ¶ 20, 61 P.3d 234, 244. "Under the doctrine of issue preclusion ... once a court has decided an issue of fact or of law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim." *National Diversified Business Serv., Inc. v. Corporate Fin'l Opportunities, Inc.*, 1997 OK 36, ¶ 11, 946 P.2d 662, 666.

¶ 6    We find that neither doctrine precludes the instant proceeding to terminate Father's rights. In *In re H.J.*, 1993 OK CIV APP 72, 854 P.2d 381, State sought termination of a mother's parental rights; however, a jury determined that the mother's parental rights should not be terminated. About one and one-half years later, State again sought termination of the mother's parental rights, on the grounds that the mother failed to correct the conditions leading to the deprived adjudication and termination would be in the best interests of the minor children. According to the mother, much of State's evidence in the second trial was the same as the evidence in the first trial. Therefore, she argued that the second termination proceeding constituted double jeopardy and a collateral attack on the earlier judgment. The Court of Appeals disagreed. Noting that the purpose of juvenile proceedings is to promote the welfare of children, not to inflict punishment, the court rejected the mothers' double jeopardy argument. *Id.* at ¶¶ 13–14, 854 P.2d at 383. The Court also determined that the doctrines of collateral estoppel or res judicata were not applicable, because "[a] trial court in juvenile matters retains continuing jurisdiction to protect the interests of its wards." *Id.* at n. 13, 854 P.2d at 383; see also *In re T.M.*, 2000 OK CIV APP 65, ¶ 12, 6 P.3d 1087 ("the trial court's jurisdiction in the deprived action continues until either termination of parental rights or dismissal or the child's attaining majority"). The Court also determined that, because the later termination proceeding was based on the mother's failure to correct the conditions which led to the deprived adjudication, "[e]vidence of the cumulative efforts of the mother since 1988 were relevant but significantly included new evidence occurring since the first trial." *In re H.J.*, 1993 OK CIV APP 72 n. 13, 854 P.2d at 383. *Cf. Ingram v. Ingram*, 1991 OK CIV APP 62, ¶ 7, 814 P.2d 1052, 1054 (because the trial court has continuing jurisdic-

tion over matters of child custody and visitation and best interests of minor children are not "fixed and immutable," second application for grandparental visitation was not barred).

¶ 7  Courts in other jurisdictions also have declined to apply the doctrines of claim and issue preclusion in termination of parental rights proceedings. In *In re Marcus W.*, 11 Neb.App. 313, 649 N.W.2d 899 (2002), the state sought to terminate a mother's parental rights because she had failed to protect her children and to make sufficient progress despite intervention. Although the mother's parental rights were terminated at the trial court level, the termination was reversed on appeal. The state again sought and received termination of the mother's parental rights, but on the grounds that she had a mental illness that was expected to continue for a prolonged indeterminate time. Although the state had raised the mother's mental illness in the first termination proceeding, it had abandoned it as a ground for termination. The mother asserted that res judicata and collateral estoppel barred the later proceeding. The Nebraska Court of Appeals rejected the res judicata argument, holding that "[a]lthough any proof of [the mother's] mental deficiency could have been presented in the first termination action, the operative facts for the two termination proceedings are different, and different proof would be required in each proceeding." *Id.* at 910. The court also rejected the mother's collateral estoppel argument, again because different proof was necessary in the two proceedings. *Id.* at 911.

¶ 8  The mother in the Nebraska case further argued that, because the state was aware of her mental deficiency at the time of the first hearing, there was no change of circumstances and the second proceeding was barred. The court rejected this argument, finding as follows:

> The instant case does not appear to be a situation where the State lost the first action and immediately moved to terminate upon a different ground. The grounds for termination ... for neglect are frequently proved, at least in part, by numerous minor acts over a period of time. The man-

ifestation of the mental illness or deficiency required to justify termination ... is also frequently observed over a long period of time. At what point a sufficient number of events to evidence the grounds for termination under these subdivisions has been met is a matter of judgment, but by their very nature, if these grounds truly exist, the State's case will get stronger as time passes. An action which is perhaps prematurely brought should not function to keep the child in a bad situation for his or her entire childhood. To hold otherwise would pervert our paramount concern of protecting the interests of the child.

*Id. See also In re S.B.*, 305 Ill.App.3d 813, 239 Ill.Dec. 219, 713 N.E.2d 750 (1999) (successive termination proceedings may be conducted); *In re Jesus "II"*, 249 A.D.2d 846, 672 N.Y.S.2d 485 (Supreme Ct., App. Div., 3d Dept.1998) (proceeding not barred by res judicata or collateral estoppel where successive proceedings involved different time periods and different service plans); *In re A.S.*, 12 Kan.App.2d 594, 752 P.2d 705 (1988) (after proceeding did not result in termination, the case and the issue of unfitness remained open for future review and continued course of conduct would justify review hearing); *People In Interest of J.R.*, 711 P.2d 701 (Colo.Ct.App.1985) (policy of limiting litigation should not be applied so as to deprive state from seeking a resolution that will best serve the interests of children).

¶ 9  Here, S.L. was adjudicated deprived in 1997. After waiting approximately three years for correction of the conditions that led to the deprived adjudication, State attempted to terminate the parental rights of Father and S.L.'s mother. The jury determined that the rights should not be terminated. However, this determination did not preclude State from again seeking termination, particularly on different grounds. As noted by the Nebraska court, a premature action to terminate Father's parental rights should not function to keep S.L. in a bad situation for her entire childhood.

¶ 10  We also note the issues and proof in the first termination proceeding were different than the issues and proof in this proceeding. Here, instead of proving that Father

failed to correct the conditions that led to the deprived status, State presented evidence that termination was in S.L.'s best interest because of Father's incarceration and the duration of foster care. Moreover, although incarceration and duration of foster care could have served as grounds for termination in the first proceeding, the detrimental effect on S.L. of separation from Father due to his incarceration, and her placement in foster care with the same family, including her biological sister, for several years was observable over a long period of time and is stronger support for termination at this point. Thus, we find the trial court did not err in rejecting Father's arguments of claim and issue preclusion.

## PARENTAL RIGHTS TERMINATION BASED ON § 7006–1.1(A)(12)

▆▆▆▆ ¶ 11 Father also argues the evidence was insufficient to support the jury verdict. In termination of parental rights cases, we canvass the record to determine whether the lower court's judgment rests on clear and convincing proof. *In re S.B.C.*, 2002 OK 83, ¶ 6, 64 P.3d 1080, 1082. "Clear-and-convincing evidence is defined as that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established." *Id.* at n. 9, 64 P.3d at 1082. We find that State presented clear and convincing evidence to support termination.

¶ 12 Keeping in mind that "the paramount consideration in proceedings concerning termination of parental rights shall be the health, safety or welfare and best interests of the child," a court may terminate a parent's rights with regard to a deprived child in the following situations:

12. A finding that all of the following exist:
a. the child has been adjudicated deprived, and
b. custody of the child has been placed outside the home of a natural or adoptive parent, guardian or extended family member, and
c. the parent whose rights are sought to be terminated has been incarcerated, and

d. the continuation of parental rights would result in harm to the child based on consideration of the following factors, among others: the duration of incarceration and its detrimental effect on the parent-child relationship; any previous incarcerations; any history of criminal behavior, including crimes against children; the age of the child; the evidence of abuse or neglect of the child or siblings of the child by the parent; and the current relationship between the parent and the child and the manner in which the parent has exercised parental rights and duties in the past, and

e. termination of parental rights is in the best interests of the child.

. . . .

10 O.S.2001 § 7006–1.1(A)(12).

¶ 13 It is undisputed that State presented evidence to meet the first three conditions of § 7006–1.1(A)(12) for termination of Father's parental rights due to incarceration—S.L. had been adjudicated deprived, she had been placed in a foster home outside the home of a natural or adoptive parent, guardian, or extended family member, and Father was incarcerated at the time of trial. State also presented evidence that continuation of Father's parental rights would result in harm to S.L., as set forth in the factors listed in § 7006–1.1(A)(12), as noted below:

¶ 14 *Duration of incarceration and its detrimental effect on the parent/child relationship:* Father was incarcerated in the Fall of 1997, when S.L. was approximately two years old. Father was convicted of robbery after a former conviction and received a ten-year sentence. At the time of trial, in April 2002, Father was still incarcerated, although he predicted he would be released in December 2002. During this period of incarceration, Father has not seen S.L. Thus, at the time of trial, Father had been incarcerated and had not seen S.L. for nearly all of her life. Moreover, even accepting as true Father's prediction that he would be released from prison in December 2002, Father would have been incarcerated at that time for over five years of S.L.'s short life.

¶ 15 *Previous incarcerations and history of criminal behavior, including crimes against children.* Although Father has no history of crimes against children, he had previously been incarcerated for four months for burglary. Further, the sentence for which he was incarcerated at the time of trial was based in part on the former conviction. Father also admitted that, after the first crime, he made a decision to commit another crime.

¶ 16 *Evidence of Father's abuse or neglect of S.L. or her siblings.* Although Father did not have custody of S.L., he testified he visited her every day at her mother's home. When S.L. was approximately nine months old, she was diagnosed as "failure to thrive" and removed from her mother's home. Yet, there is no evidence that Father ever recognized the failure to thrive condition. Indeed, he testified at trial that S.L. should be with her mother because the mother would not hurt S.L. and there was never anything wrong with S.L. Finally, although Father testified that he helped S.L.'s mother with food and clothing for S.L. and the two other children that he has with S.L.'s mother, he has never paid child support for any of his children.

¶ 17 *The current relationship between Father and S.L. and the manner in which the parent has exercised parental rights and duties in the past.* S.L. was removed from her mother's home when she was less than one year old. According to Father's testimony, he visited S.L. every day in her mother's home and continued to visit her monthly while she was in foster care. However, visitation completely ceased in the fall of 1997 when Father was incarcerated, and Father has not seen S.L. since that time. Although Father testified that, since the first trial, he has attempted to send cards and letters to S.L. through the DHS case worker,[2] he did not send any cards or letters to S.L. before the first trial, i.e., for approximately two and one-half years. In fact, he admitted he made no efforts, while incarcerated, to contact S.L. prior to the first trial, or to continue a relationship with S.L. because there was no way for him to contact her. Although Father testified he unsuccessfully requested visitation with S.L. in prison, there is nothing in the record to suggest that, since his incarceration, Father has ever made any formal requests to the court for visitation or telephone contact with S.L. It is clear from this evidence that, even if we accept the inherent difficulty of maintaining a relationship with S.L., Father has not adequately pursued a relationship. Moreover, as noted above, although Father helped S.L.'s mother before his incarceration, he has never paid child support for S.L.

¶ 18 *The best interests of S.L.* Finally, there is clear and convincing evidence in the record that termination of Father's parental rights would be in S.L.'s best interests. S.L. has been in the same foster home since 1997. Additionally, S.L.'s biological sister, D.L.,[3] has been in the same foster home. At the time of trial, the foster parents were in the process of adopting D.L. and expressed a desire to adopt S.L. As noted by the caseworker, S.L. has bonded with her foster family, is very close to D.L., and knows no other family as her own. Both the DHS caseworker and the CASA worker testified that it would be in S.L.'s best interests to remain in the foster care placement and to have Father's parental rights terminated.

¶ 19 State presented clear and convincing evidence of all of the factors listed in § 7006–1.1(A)(12). Significantly, State has presented evidence that termination of Father's parental rights is in S.L.'s best interests. Therefore, we will not disturb termination of Father's parental rights based on § 7006–1.1(A)(12).

2. We note that, through no fault of Father, S.L. did not receive the cards and letters, because the DHS caseworker chose not to give them to S.L. Although we do not condone the caseworker's action of not forwarding the cards or letters to S.L. or, at the very least, presenting them to a counselor or the court to decide whether it would be in S.L.'s best interest to receive them, it is clear from the record that Father, through his own actions, had lost significant contact with S.L. between the time of his incarceration and the first trial.

3. S.L. and D.L. have the same mother, whose rights to D.L. were terminated in the first trial.

## PARENTAL RIGHTS TERMINATION PURSUANT TO § 7006–1.1(A)(15)

¶ 20 State also sought termination of Father's parental rights pursuant to § 7006–1.1(A)(15). Bearing in mind that "the paramount consideration in proceedings concerning termination of parental rights shall be the health, safety or welfare and best interests of the child," § 7006–1.1(15) allows termination of parental rights when "[a] child has been placed in foster care by the Department of Human Services for fifteen (15) of the most recent twenty-two (22) months preceding the filing of the petition." It is undisputed that, at the time of the filing of the petition, S.L. had been in foster care for 15 of the most recent 22 months.

¶ 21 Father argues that "the trial court erred in applying ... § 7006–1.1(A)(15) where termination proceedings are predicated solely on the father's incarceration under ... § 7006–1.1(A)(12)." In particular, Father argues that § 7006–1.1(A)(12) is a specific statute that controls over the more general § 7006–1.1(A)(15), and the former statute "should govern in determining the grounds for termination of parental rights when there is a conflict as is the case when a parent is incarcerated for a much longer period than 15 months." In effect, Father argues that § 7006–1.1(A)(15) should not apply to someone who is incarcerated. We disagree.[4]

¶ 22 Under the circumstances of this case, we disagree with Father's basic premise that § 7006–1.1(A)(12) and § 7006–1.1(A)(15) conflict and that State, therefore, could not alternatively seek termination under both sections. Here, the fifteen months of foster care admittedly coincided with Father's incarceration. Nevertheless, Father admitted he was incarcerated because, after having already committed one crime for which he had been incarcerated, he made a decision to commit another crime. Father did not deny that he committed the crime that led to his incarceration. S.L.'s placement in foster care for 15 of the preceding 22 months was, therefore, in large part due to Father's voluntary act that led to incarceration.[5] Therefore, State was entitled to pursue termination on either ground.

¶ 23 Moreover, pursuant to § 7006–1.1(A)(15), State could not merely show the fact of foster care for 15 of the preceding 22 months. State also had to prove, by clear and convincing evidence, that termination is in S.L.'s best interest. *In re T.M.,* 2000 OK CIV APP 65, ¶ 15, 6 P.3d 1087, 1093. State met this burden.

"The paramount consideration in all proceedings concerning a child alleged or found to be deprived is the health and safety and the best interests of the child." 10 O.S.2001 § 7001–1.2(B). The purpose of the laws relating to deprived children is, in part, to "[s]ecure for each such child, the permanency, care and guidance as will best serve the spiritual, emotional, mental and physical health, safety and welfare of the child." 10 O.S.2001 § 7001–1.2(B)(1). "[T]he 'plain purpose' of § 7006–1.1(A)(15) ... is to protect children from extended foster care." *In re B.C.,* 2000 OK CIV APP 130, ¶ 33, 15 P.3d 8 (internal quotation marks omitted).

¶ 24 S.L. has been in state custody for nearly her entire life. At the time of trial, she had lived with the same foster family for approximately five years. The foster family also has had custody of S.L.'s sister D.L.; the foster family was in the process of adopting D.L. and expressed the desire to also adopt S.L. It is clear from the evidence that S.L. has bonded with the foster family and is extremely close to her sister. The foster family has provided a stable, safe, healthy

---

**4.** Even if we were to accept Father's argument and not apply § 7006–1.1(A)(15), State presented clear and convincing evidence of all the factors listed in § 7006–1.1(A)(12). Therefore, termination of Father's rights under § 7006–1.1(A)(12) is appropriate, without consideration of § 7006–1.1(A)(15).

**5.** This is not the type of situation envisioned by the Court of Civil Appeals in *In re C.R.T.,* 2003 OK CIV APP 29, 66 P.3d 1004, where extended foster care is not due to the parent's conduct, *e.g.,* where the parent is involuntarily absent due to something out of his control, such as being held as a prisoner of war. In the case at bar, Father's incarceration, and indirectly S.L.'s placement in extended foster care, were admittedly due to Father's own culpable conduct.

home for S.L. and has met her emotional, mental, and physical health and welfare. Thus, State presented clear and convincing evidence that it is in S.L.'s best interest for Father's rights to be terminated pursuant to § 7006–1.1(A)(15).

## EVIDENTIARY RULING

¶ 25 In his final argument, Father argues that the trial court erred in granting State's motion in limine to exclude evidence regarding the jury verdict from the first trial in 2000. Even if the trial court erred in granting the motion in limine, the trial in 2000 was mentioned at least 15 different times during the trial in the instant case. Although many of the references were to termination of S.L.'s mother's parental rights, Father's counsel elicited specific testimony from the DHS caseworker regarding the jury's decision not to terminate his parental rights in 2000. In relevant part, the DHS caseworker testified as follows:

Q.... You entered the case a month after a trial with a jury where his rights were not terminated. They knew he was in prison, isn't that right?

A. Correct.

. . . .

Q. And his rights were not terminated and yet a month after that happened, you're treating him like his rights are going to be terminated again based on his incarceration; isn't that right?

A. Based on the petition.

. . . .

Q. Do you not think a jury's verdict is the final order?

A. I would believe so, yes.

It is clear from reading the trial transcript that the jury was fully advised of State's previous attempt to terminate the parental rights of Father and S.L.'s mother. Therefore, it cannot be said that Father suffered any prejudice as a result of the trial court's ruling on the motion in limine.

## CONCLUSION

¶ 26 The prior determination that Father's parental rights should not be terminated does not preclude the present termination proceedings. The determination that Father's rights should be terminated pursuant to § 7006–1.1(A)(12) is supported by clear and convincing evidence. Sections 7006–1.1(A)(12) and 7006–1.1(A)(15) do not conflict, under the circumstances, and State was entitled to seek termination on the alternative grounds of incarceration and extended foster care placement. Because the jury was made fully aware of the previous determination that Father's rights should not be terminated, Father was not prejudiced by the trial court's ruling on the motion in limine regarding evidence of the previous trial. The termination of Father's parental rights is therefore affirmed.

¶ 27 AFFIRMED.

STUBBLEFIELD, J., and GOODMAN, J. (sitting by designation), concur.

JERRY L. GOODMAN, Acting Presiding Judge.