NOT DESIGNATED FOR PUBLICATION

No. 112,228

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LEE E. WILLIAMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed September 25, 2015. Affirmed in part, reversed in part, and remanded with directions.

*Reid T. Nelson*, of Capital and Conflicts Appeals Office, for appellant.

*Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER, J., and WILLIAM R. MOTT, District Judge, assigned.

*Per Curiam*:  Lee E. Williams appeals two rulings of the Wyandotte County District Court in this criminal case. Williams contends the district court erred by denying his motion to withdraw his guilty pleas and by revoking his probation. We affirm the denial of his motion to withdraw guilty pleas, but we reverse the revocation of his probation and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On July 2, 2010, the State charged Williams with possession of cocaine with intent to distribute and no tax stamp. On September 28, 2010, Charles Ball entered his appearance as Williams' counsel. Almost 6 months later, Williams appeared with Ball, waived the preliminary examination and arraignment, and entered pleas of not guilty. On August 8, 2011, Williams appeared for trial with a different attorney. Williams moved to continue the trial setting, and the case was continued for a status or plea hearing on September 9, 2011.

On that date, Williams appeared with his newly retained counsel, Josh Allen. The district court permitted Ball to withdraw as counsel and set the matter for a pretrial conference. The pretrial conference was continued until November 2, 2011, when the setting changed to a plea hearing. The plea hearing was then continued until December 16, 2011, but Williams failed to appear. The district court issued a bench warrant for Williams and, after he appeared on the warrant, continued the matter again.

On April 23, 2012—almost 2 years after he was charged—Williams finally appeared with Allen for the plea hearing before Judge Robert P. Burns. Judge Burns placed Williams under oath and asked him whether he was "presently under the influence of any alcohol or drugs?" Williams said he was not. Williams advised the district court that he had a high school education, could read and write, had read the Petition to Enter Plea of Guilty (Petition), and understood all of its terms.

The Petition identified Williams' counsel as Allen. It recited that Williams had thoroughly discussed the charges, his rights, and the possible sentence with Allen. Williams signed the Petition under oath, and Allen executed a certificate that he had counseled Williams on the guilty plea, stating "[t]o the best [of] my knowledge and

belief, the statements, representations and declarations made by the defendant in the foregoing petition are in all respects accurate and true."

Judge Burns thoroughly reviewed the Petition with Williams at the hearing, insuring that Williams understood his rights. Williams also assured Judge Burns he was satisfied with Allen's legal representation. Williams pled guilty as charged in exchange for the State's recommendation of probation and "[n]o other departures." While providing the factual basis, Williams admitted he possessed cocaine with an intent to sell, the crime occurred in Wyandotte County on or about July 1, 2010, the amount of the drug was greater than 1 gram, and there was no tax stamp on the cocaine.

Judge Burns accepted Williams' guilty pleas, finding they were knowingly and voluntarily made, including that Williams was "mentally competent to enter a plea at this time and . . . he's had the advice of counsel, a competent attorney, with whom he says he is satisfied."

In advance of Williams' sentencing, the presentence investigation report showed Williams' criminal history score was B, and that he faced a presumptive prison term for the possession of cocaine conviction.

On July 27, 2012, Judge Burns sentenced Williams and granted a departure to probation. The judge warned Williams:

> "You know, anytime that someone's placed on probation, it's an opportunity to avoid going to prison. In your case that's particularly true. The presumption in this case was for imprisonment. I'm going to honor the plea agreement, but if you come back here, you understand you've already had your second and final chance, so you've got no margin for error, you need to do exactly what you're supposed to do."

3

Judge Burns signed the order of probation. Williams had already executed the document under oath after initialing each requirement. The first requirement was: "Refrain from violation of any local, state, or federal laws." Another requirement was: "You shall not carry any type of weapon."

On September 5, 2013, Williams' intensive supervision officer filed a motion to revoke his probation. She alleged: "Failure to refrain from violation of law. Williams is suspected in the homicide of his girlfriend on 09/04/2013. He presents a significant risk to public safety at this time." On January 21, 2014, the district court appointed Paul Dent as Williams' counsel in the revocation matter. Dent was also Williams' counsel in the murder case pending in Wyandotte County.

We pause to note that the record on appeal in the present drug case contains the transcript of the preliminary examination from the murder case. The State obtained addition of the transcript to this record after Williams had filed his initial appellate brief. In his reply brief, Williams questions whether this transcript is part of the "entire record" properly before us. See Supreme Court Rule 3.01(a) (2014 Kan. Ct. R. Annot. 20). We will address that legal issue below. For now, it is sufficient to note that at the preliminary examination, Judge Robert L. Serra bound Williams over on first-degree murder and criminal possession of a firearm charges and assigned the case to Judge Burns for jury trial.

Returning to the present case, on May 6, 2014, Williams filed a motion to withdraw his guilty pleas in the drug case. Dent argued Williams could file his motion outside the 1-year limitation because his client "has only recently learned that his primary counsel, Charles Ball, has been suspended from the practice of law." Dent contended Williams, "would have filed this motion sooner if he had known that there might be some question about Mr. Ball's ability to meet his professional obligations."

4

On May 14, 2014, Dent filed a supplement to his motion to withdraw plea. He added an allegation that Williams was "under the influence of drugs or medication at the time of the plea and did not understand what he was doing or that he had a right to move to withdraw the pleas."

On May 16, 2014, Williams appeared with Dent before Judge Burns on his motion to withdraw plea and the State's motion to revoke probation. First, the district court considered Williams' motion to withdraw plea.

Dent acknowledged that "Mr. Ball . . . was supplanted by Josh Allen, who was retained as counsel for Mr. Williams, and it was Josh Allen who represented Mr. Williams at the time of the plea back on April 23rd, 2012." Nevertheless, Dent argued that Williams had "only recently learned that Charles Ball had been suspended from the practice of law," and that Williams believed Ball "did not fulfill his professional obligations as evidenced now by the fact that he's suspended." Dent maintained Williams was "not aware of a law that there was a one-year limitation" on motions to withdraw plea. Finally, Dent added, "[M]y client also wants me to state to the Court at the time that he entered into the plea he was under the influence of drugs or medication."

In his ruling, Judge Burns found no "showing of excusable neglect" in Williams' filing the motion to withdraw pleas beyond the 1-year time limitation. The judge also found Williams was "fully aware of what he was doing" when he pled guilty, and as a result, he had not shown the requisite manifest injustice as required to withdraw the pleas. Accordingly, the judge denied Williams' motion to withdraw pleas.

Next, the district court addressed the State's motion to revoke Williams' probation in the cocaine possession case. Although Dent admitted that Williams was bound over for trial in the subsequent murder case, he did not stipulate to the probation violation. Dent argued:

5

"He has not been convicted of murder, Judge. I know that he's been—I represent him on the other case, Judge, I'm not about to deny that he's been charged and he's been arraigned. We had a preliminary hearing. I admit that, Judge. My client has asked me to deny these allegations upon which they are making their motion."

In response, Judge Burns stated, "I understand. I'm not, obviously, asking him to concede his guilt." The judge indicated he would "take judicial notice" that Williams was "charged with one count of murder in the first degree, premeditated murder," that he was "[a]lso charged with one count of criminal possession of a firearm," and that "a preliminary hearing was conducted on April 1st, 2014 in front of Judge Serra." Judge Burns continued: "Judge Serra found probable cause to believe the defendant guilty as charged and the Court has reviewed that hearing and what ruling Judge Serra made at the conclusion of that hearing, so I do find sufficient evidence to support" the State's allegation of a violation. Judge Burns revoked Williams' probation and ordered him to serve his prison sentence.

Williams appeals.

DENIAL OF MOTION TO WITHDRAW PLEAS

On appeal, Williams contends "because the plea[s were] not voluntary and knowing, he should be allowed to withdraw [them]." We will not disturb a district court's denial of a postsentence motion to withdraw plea absent an abuse of discretion. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). Discretion is abused when a judicial action is arbitrary, fanciful, or unreasonable, or when it is based on an error of fact or law. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

K.S.A. 2014 Supp. 22-3210(e)(1) imposes a 1-year time limitation on motions to withdraw plea. Williams exceeded that limitation, as Dent acknowledged below. The legislature has provided in such cases: "The time limitation herein may be extended by

6

the court only upon an additional, affirmative showing of excusable neglect by the defendant." K.S.A. 2014 Supp. 22-3210(e)(2).

The State argues that Williams "has shown no excusable neglect." We agree. First, Williams fails to brief excusable neglect, thereby waiving or abandoning the issue. See *State v. Llamas*, 298 Kan. 246, 264, 311 P.3d 399 (2013). At most, Williams recites the excusable neglect arguments raised below, but this is insufficient.

> "A failure to support an argument with pertinent authority or to show why the argument is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. Therefore, an argument that is not supported with pertinent authority is deemed waived and abandoned. [Citation omitted.]" *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013).

Second, even if we were to consider the time limitation issue, we would not find merit in Williams' arguments. Beginning with Bell's competence, we agree with the State that Bell had nothing to do with Williams' plea. Williams pled guilty months after Bell withdrew from representing Williams' legal interests, and, as the State also points out, Bell's unrelated suspension from the practice of law was not "prima facie evidence of ineffective assistance of counsel" in Williams' case.

Another excusable neglect argument Williams raised below was his claimed ignorance of the 1-year time limitation. Our question, then, is whether such an allegation establishes excusable neglect. This court has relied on the Black's Law Dictionary's definition of excusable neglect before. See *State v. Delgado*, No. 109,601, 2014 WL 1707718, at *3 (Kan. App. 2014) (unpublished opinion), *rev. denied* 301 Kan. __ (2015).

> "**excusable neglect** . . . A failure—which the law will excuse—to take some proper step at the proper time (esp. in neglecting to answer a lawsuit) not because of the party's own carelessness, inattention, or willful disregard of the court's process, but

7

because of some unexpected or unavoidable hindrance or accident or because of reliance on the care and vigilance of the party's counsel or on a promise made by the adverse party." Black's Law Dictionary 1195-96 (10th ed. 2014).

As the panel noted in *Delgado*, this definition is consistent with Kansas cases applying K.S.A. 60-206 and K.S.A. 60-260, which also make allowance for excusable neglect. See 2014 WL 1707718, at *3.

Williams does not make a showing of excusable neglect simply by alleging he was unaware of the 1-year time limitation. At most, Williams alleges his own carelessness, inattention, or willful disregard of the district court's procedures. Furthermore, Williams presented no evidence on the point.

Assuming Williams had presented such evidence, we would conclude the statutes provided him with constructive notice of the 1-year time limitation. For example, where a defendant argued his "recent discovery of a statutory provision constitute[d] 'newly discovered evidence,'" our Supreme Court responded: "The maxim that ignorance of the law is no excuse is well established, longstanding, and widely known." *State v. Woodward*, 288 Kan. 297, 304, 202 P.3d 15 (2009). That well-known maxim also applies under these circumstances.

Importantly, if Williams survived the 1-year time limitation, he would still have to show "manifest injustice" to support a withdrawal of his plea. K.S.A. 2014 Supp. 22-3210(d)(2). On appeal, Williams does not assert that he was under the influence of drugs or medication, but only that he argued this claim in the district court. In contrast, Williams swore before Judge Burns that he was not under the influence. At the plea withdrawal hearing, the district court found Williams was "not only not under the influence of alcohol or drugs," but he "was fully aware and comprehended what we were doing there at that time." Given this finding by the district court, Williams' passing

reference to his argument below, without any evidence to support it, does not prove an abuse of discretion.

Additionally, Williams claims he "never received any legal advice, whatsoever, from trial counsel." But Williams again focuses on Bell, who was absent from this litigation for over 8 months before the guilty pleas. Significantly, Williams made no substantive allegations in the district court regarding Allen, and he makes none on appeal. As a result, we disagree that Williams' "contentions, that essentially [he] never received any legal advice, whatsoever, from trial counsel, went unrebutted." Williams has never raised ineffective assistance of counsel claims with respect to Allen.

Next, Williams argues issues on appeal that he did not raise before the district court. These issues are not properly before us. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). We disallow Williams' arguments for that reason, but also because they are not meritorious.

Williams argued that at the plea hearing Judge Burns neglected to read the charges to which he was pleading guilty. Judge Burns stated the following at the plea hearing:

> "At this time I'll ask you how you wish to plead to count one. That charges you with possession of cocaine with the intent to distribute, it's a level 3 drug felony. As to that charge of possession with the intent to distribute, do you wish to plead guilty or not guilty?"

Williams maintains this was insufficient because it "left out the date and county of the allegation." Williams complains that the judge's question for the no tax stamp charge was similarly insufficient, and that it further "omitted the amount, which is required to be 'in excess of 1 gram.'"

9

Williams does not cite authority holding that a district court must recite criminal charges in detail when taking a guilty plea. The record also does not contain evidence or even argument below that Williams was ignorant of the charges against him. At the plea hearing, for example, Williams provided a factual basis for all of the elements appellate counsel now claims were missing—the venue, the date, and the amount of the drug in question. This argument is without merit.

Williams also argues Judge Burns did not advise him of his right to trial counsel. But the Petition informed Williams of his "right to a speedy and public trial by jury," and "[a]t that trial, and at all stages of the proceedings, the right to the assistance of a lawyer." Williams told Judge Burns at the plea hearing that he had reviewed the Petition with Allen, and that he understood its terms. The record does not contain any evidence or even argument below that Williams was ignorant of his right to trial counsel. This argument does not establish error.

Given the lack of evidence showing manifest injustice, Williams' citations to the factors from *State v. Edgar*, 281 Kan. 30, Syl. ¶ 2, 127 P.3d 986 (2006), are not persuasive. On the contrary, the record supports the district court's conclusion that Williams was "represented by competent counsel," was not "mislead, coerced, mistreated, or unfairly taken advantage of," and that "the plea was fairly and understandingly made." 281 Kan. 30, Syl. ¶ 2. Williams does not show the district court abused its discretion by denying the motion to withdraw plea.

REVOCATION OF PROBATION

For his second issue on appeal, Williams contends there was insufficient evidence to prove that he had violated his probation by committing murder. Williams specifically argues that his admission to being bound over for trial after the preliminary examination in the murder case was not a sufficient basis to revoke his probation in the present drug

10

case. Williams points out that the standards of proof at the hearings differed—probable cause at the preliminary examination versus preponderance of the evidence at the probation revocation hearing.

District courts are guided by longstanding standards of review in probation revocation matters:

> "To sustain an order revoking probation on the ground that a probationer has committed a violation of the conditions of probation, commission of the violation must be established by a preponderance of the evidence. Once there has been evidence of a violation of the conditions on which probation was granted, the decision to revoke probation rests in the sound discretion of the district court." *State v. Gumfory*, 281 Kan. 1168, Syl. ¶ 1, 135 P.3d 1191 (2006).

Probation revocation hearings are controlled by K.S.A. 2014 Supp. 22-3716(b). In particular, the State "shall have the burden of establishing the violation." K.S.A. 2014 Supp. 22-3716(b)(2). Importantly, the State acknowledges on appeal that "[t]he district court revoked Williams' probation based upon the fact that he had been bound over for trial in his new criminal case."

Williams argues this was not enough, citing in support *State v. Bailey*, No. 100,918, 2009 WL 2506265, at *1 (Kan. App. 2009) (unpublished opinion). In *Bailey*, the district court revoked probation because Bailey had been bound over on new charges "in another division of the Wyandotte County District Court" and also had been indicted by a grand jury in Missouri. 2009 WL 2506265, at *1. On appeal, Bailey argued the district court "erred in revoking his probation based solely on the probable cause findings made in the new charges in Wyandotte County and in Missouri." 2009 WL 2506265, at *2.

11

Our court in *Bailey* began by acknowledging, "[t]he State is not obligated to wait for a conviction on new charges in order to prove a probation violation." 2009 WL 2506265, at *2. The court cited *State v. Inkelaar*, 38 Kan. App. 2d 312, 314-17, 164 P.3d 844 (2007), *rev. denied* 286 Kan. 1183 (2008), wherein "the State presented evidence from a witness and a videotape establishing by a preponderance of evidence that Inkelaar had stolen money from his employer." 2009 WL 2506265, at *3. The *Bailey* court then noted:

> "In this case, however, the State put on no evidence other than a copy of the Missouri indictment and counsel's argument regarding the nature of the pending charges. It does not seem that the State presented the court with a copy of a preliminary hearing transcript. Moreover, the trial judge was never a part of the new Wyandotte County charges. In addition, the record failed to show that the affidavits from arrest warrants or other evidence that might have risen to a preponderance of the evidence was ever presented to the court." 2009 WL 2506265, at *3.

The *Bailey* court concluded that the district court "clearly applied the incorrect standard in indicating the revocation was based upon the 'probable cause' findings made in the new cases, rather than based on a preponderance of evidence." 2009 WL 2506265, at *3. Accordingly, our court held the State had not met its burden:

> "Because the trial judge did not preside over the preliminary hearing on the new charges and because the State presented no evidence other than probable cause findings, it is questionable whether the State carried its burden of proof when the motion to revoke Bailey's probation was heard. Moreover, the trial court clearly applied the wrong standard, probable cause. As a result, we reverse and remand this matter for a new hearing and for the court to apply the correct standard." 2009 WL 2506265, at *3.

*Bailey* is analogous, but in the present case, the murder case was assigned to Judge Burns, and he took judicial notice of it at the revocation hearing. Judge Burns, therefore, had some evidence before him when he revoked probation. See K.S.A. 60-409; *Wentland*

12

*v. Uhlarik*, 37 Kan. App. 2d 734, Syl. ¶ 3, 159 P.3d 1035 (2007); *In re A.S.*, 12 Kan. App. 2d 594, 598, 752 P.2d 705 (1988).

Our challenge is to identify the content of the judicial notice. The State asserts Judge Burns "indicated that [he] had reviewed the transcript of the preliminary [examination]." The judge did not say so, however. Judge Burns only said he had reviewed the preliminary examination and Judge Serra's ruling. The transcript of the revocation hearing certainly does not show that the State presented Judge Burns with the transcript of the preliminary examination or with any other written statements under oath as proof of Williams' violation. Indeed, the transcript of the preliminary examination was produced nearly 2 months *after* Williams' probation revocation hearing.

We also agree with Williams that the transcript of the preliminary examination in the murder case is not part of the "entire record" in the present case under Supreme Court Rule 3.01(a). The entire record is limited to "all original papers and exhibits filed in the district court," "the court reporter's notes and transcripts of all proceedings," "any other court authorized record of the proceedings," and "the entries on the appearance docket." Supreme Court Rule 3.01(a)(1), (2), (4). The improper addition of the transcript of the preliminary examination to the record on appeal provides another reason not to rely upon it. See *State v. Brownlee*, 302 Kan. __, __ P.3d __, 2015 WL 4681185 (2015).

Finally, although Judge Burns did not explicitly say he was ruling on the probation violation based upon probable cause, neither did he mention the preponderance of the evidence standard. Where the correct "standard of proof" was "the standard of probable cause," our Supreme Court refused to "impose a preponderance of the evidence standard." *State v. Ultreras*, 296 Kan. 828, 843, 295 P.3d 1020 (2013). Similarly, a district court may not impose a probable cause standard in place of the preponderance of the evidence standard. Since the mere fact that Williams was bound over for trial under the probable cause standard was insufficient evidence to revoke Williams' probation, and

13

it appears the wrong legal standard was employed to determine whether Williams violated his probation, we reverse the district court's order revoking probation and remand the matter for a new probation revocation hearing.

Affirmed in part, reversed in part, and remanded with directions.