On Application for Rehearing
The opinion of this court issued on September 28, 2001, is withdrawn, and the following is substituted therefor.
The State Department of Human Resources ("DHR") petitioned to terminate the parental rights of C.W. (the "mother") as to her four children, S.N.W., J.M.W., J.A.W., and M.A.W. (the "children"). DHR also sought to terminate the rights of R.P.W. (the "father") as to S.N.W., J.M.W., and J.A.W. The father voluntarily relinquished his parental rights. The juvenile court entered a judgment terminating the mother's parental rights. The mother appeals.
The termination of parental rights is a drastic measure, and the courts gravely consider such action. Ex parte Beasley, 564 So.2d 950, 952 (Ala. 1990). A natural parent's prima facie right to the custody of her child is outweighed only by clear and convincing evidence that termination of parental rights is in the best interests of the child. L.N. v. State Dep'tof Human Res., 619 So.2d 928, 929 (Ala.Civ.App. 1993). To determine the child's best interests, the juvenile court considers the parent's physical, financial, and mental abilities to care for the child. J.L.B.v. State Dep't of Human Res., 608 So.2d 1367, 1368 (Ala.Civ.App. 1992).
A court may terminate parental rights, pursuant to Ala. Code 1975, § 26-18-7(a), upon a finding
 "that the parents of [the] child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future. . . ."
The juvenile court is required to apply a two-pronged test in determining whether to terminate parental rights: (1) clear and convincing evidence must support a finding that the child is dependent; and (2) the court must properly consider and reject all viable alternatives to a termination of parental rights. Beasley, at 954.
The mother first argues that the record does not contain clear and convincing evidence to support a finding that the children are dependent. We disagree. DHR became involved with the mother and the children in 1997. When the children were first removed from her custody, the mother was living in an extended-stay motel. The mother tested positive on a drug test when the children were first removed from her custody. She suffers *Page 173 
from several mental disorders, including bipolar disorder, major depression, and anxiety disorder. She has attempted suicide in the past. She is unemployed and receives Social Security disability payments.
As required by DHR, the mother completed drug rehabilitation and aftercare and began mental-health counseling to address anger-management issues and communication skills. She had some attendance problems in both drug-rehabilitation counseling and in mental-health counseling in early 1999. The drug-rehabilitation counselor reported in November 1999 that she had completed the rehabilitation program and aftercare program and that she was "compliant." The mental-health counselor reported that the mother was very motivated and was making progress.
The mother has resided with her boyfriend since December 1998. In January 1999, the mother reported to her caseworker that her boyfriend abused her; she denied that he abused the children. Despite urging by DHR to leave the boyfriend, the mother continued to reside with him. Although the boyfriend did begin counseling with the mother when the children were first removed from her custody, in January 2000 the father communicated to DHR that he did not want counselors or caseworkers on his property. Since that time, the boyfriend has not cooperated with DHR.
The two oldest children, who were 13 and 11 at the time of the termination hearing in March 2001, have severe behavioral and emotional problems; the third child has shown some signs that he, too, may be developing emotional problems. The three oldest children were reportedly physically and emotionally abused by their biological father. The oldest child has been diagnosed with depression and has attempted to burn down residences in which he was staying. The second oldest child, who has been diagnosed with oppositional-defiance disorder, has taken knives from his foster homes, has shown a fascination with weapons and fire, and has threatened to commit suicide if he was not reunited with his mother. He was hospitalized in September 2000 for a major depressive episode. Although the two oldest children were returned to the mother for approximately a month, she requested that DHR place them in foster care again because she could not control them. In fact, she reported that they had physically threatened her. The record reveals that the children, especially the two oldest children, argue with each other and engage in physical altercations at times.
Although the mother had made some progress in adjusting her circumstances to better meet the needs of her children, it is apparent from the record that she must rely on her boyfriend for housing and for other support and that she cannot, or will not, sever that relationship despite its abusive nature. Although she denies that the boyfriend had ever abused the children, the older children reported that he had at least physically disciplined them on occasion. The mother admittedly cannot control the older of her four children and, according to some DHR reports, barely interacted with her children when they visited. These children need a home in which they receive therapeutic care tailored to their individual emotional problems. The mother cannot provide such care in a home in which emotional or physical abuse is occurring. The mother, faced with the choice, chose to remain with an abusive boyfriend whose attitude toward DHR clearly stands in the way of her reunification with the children rather than to seek reunification by complying with DHR's directives and suggestions. Therefore, we conclude that clear and convincing *Page 174 
evidence supports a finding that the children are dependent.
The mother also argues that the juvenile court erred by finding no viable alternatives to termination of her parental rights. DHR contacted the maternal grandparents, the paternal grandparents, and the mother's brother in a effort to seek out relative resources. The mother's brother never responded to DHR's inquiries, and both sets of grandparents declined to take the children into their respective homes. The father, who likely was not a suitable alternative in light of past abuse allegations, relinquished his parental rights at the termination hearing. Therefore, we conclude that there are no viable alternatives to termination. See D.S.S. v. Clay County Dep't of Human Res., 755 So.2d 584
(Ala.Civ.App. 1999).
The evidence also clearly and convincingly supports a finding that termination of the mother's parental rights is in the best interests of the children. DHR has provided significant assistance intended to help the mother improve her mental health and her parenting skills, but, despite some improvement in the beginning, the mother has failed to adjust her circumstances to adequately meet the needs of her children. The children are beginning to improve in their respective foster homes.
Therefore, we affirm the trial court's judgment terminating the mother's parental rights.
OPINION OF SEPTEMBER 28, 2001, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
Yates, P.J., and Thompson, Pittman, and Murdock, JJ., concur.