V.G. ("the mother") appeals a judgment finding Dy.G. ("the child"), a female, dependent and awarding custody of the child to D.G., the child's cousin. We affirm in part, reverse in part, and remand with instructions.
On January 16, 2007, the Madison County Department of Human Resources ("DHR") petitioned the juvenile court, seeking, among other things, a judgment adjudicating the child, born on June 15, 1993, dependent and awarding physical and legal custody of the child to D.G.
The juvenile court held an ore tenus proceeding on DHR's petition on April 12, 2007. At the conclusion of the proceeding, the juvenile court rendered an oral judgment adjudicating the child dependent. On July 5, 2007, the juvenile court entered a written judgment in conformance with its oral judgment. In its written judgment, the juvenile court awarded D.G. custody of the child, subject to the visitation rights of the mother, which, the court ordered, were to be exercised solely at the discretion of D.G. The mother then timely appealed. *Page 552 
The following is a recitation of the pertinent evidence. The mother has three children, namely, the child, Dom.G. ("the son"), and W.G. ("the daughter"). The son is an adult; the daughter was 17 years old at the time of the proceeding in this matter.
The evidence established that DHR had previously been involved with the mother regarding her two older children beginning in 1991. Jamia Shelby, the DHR caseworker for the child since August 2005, testified that the events giving rise to the present action began in 2004 when DHR received a report alleging that the son had injured the mother's husband, E.B. ("the stepfather"), while engaging in a physical altercation with him. Shelby also testified that, sometime thereafter, the daughter had stabbed the stepfather during an altercation with the mother and the stepfather.
Shelby testified that, throughout the child's life, the mother had been involved in relationships in which domestic violence had occurred. According to Shelby, the child told her that she had witnessed the mother and the stepfather commit acts of domestic violence against each other and that she had been unable to sleep because of the domestic violence that had been occurring between the mother and the stepfather. Shelby also stated that the child had informed her that the mother had asked for the son's and the daughter's assistance when the mother and the stepfather would engage in physical altercations.
DHR devised a safety plan requesting that the mother leave the stepfather because the children had become involved in altercations between the mother and the stepfather. The mother complied with that request. However, Shelby testified that the mother violated the safety plan when the mother visited the stepfather with the child over a weekend. The mother denied that she and the child had stayed with the stepfather over a weekend, but she admitted that the child had visited the stepfather. The mother testified that the child had informed her that Shelby had given the child permission to visit the stepfather. The mother testified that she had separated from the stepfather in December 2005. The mother also stated that she plans to seek a divorce.
After the mother and her children left the stepfather, the mother and the children began residing with the mother's aunt. Shelby testified that DHR then requested that the mother leave the aunt's residence after the mother and the child had engaged in a physical altercation in early 2006. The mother denied that she and the child had had a physical altercation. However, she testified that she had corporally punished the child because the child had not informed her of the child's whereabouts over the course of a weekend.
DHR first placed the child with another relative before placing the child with D.G. in December 2006. D.G.'s daughter and granddaughter, who are 12 years old and 8 months old, respectively, reside with D.G. in a three-bedroom house in Athens. DHR conducted a home study of D.G.'s residence and issued a favorable report. The child has resided with D.G. since that time. D.G. testified that the child had been progressing academically during the time the child has been in his care.
Shelby testified that since 2004 DHR had offered the mother various services, such as domestic-violence and anger-management counseling, budgeting counseling, and housing assistance. Regarding counseling, Shelby testified the mother had attended counseling for a few weeks upon DHR's prompting but had failed to continue attending shortly thereafter. The mother testified that she was unable to *Page 553 
attend counseling because it conflicted with her work schedule and because she had had a hysterectomy. However, she later admitted that she had failed to attend counseling sessions because she had not been "getting [anything] out of it." She also testified that she had informed officials at DHR that she would seek counseling from her own counselor. Nevertheless, the mother admitted that she was not attending counseling at the time of the proceeding in this matter. Shelby testified that DHR also had offered the stepfather counseling; the stepfather did not desire to participate. Furthermore, Shelby testified that budgeting service providers had met with the mother for several weeks but that the mother had failed to continue to meet with those providers.
Additionally, Shelby testified that DHR had secured housing for the mother on two occasions. She stated that the mother had been evicted from one residence and had vacated the other. However, the mother testified that DHR had only assisted her in obtaining housing once, and she denied that she had been evicted from that residence. The mother testified that she had left that residence because she believed that stairs in that residence posed a safety hazard to her grandchild, who resides with her, and because the residence was "nasty." Shelby testified that the residence that DHR had assisted the mother in obtaining was in fair condition. She also testified that the mother had informed her that she had vacated that residence because she could not afford the rent and that she was planning to stay at her aunt's residence while the aunt was out of town.
The mother admitted that from December 2005 to January 2007 she had resided in three to four different places. At the time of the proceeding in this matter, the mother, who lives in Huntsville, had been living in a three-bedroom residence with the daughter and the daughter's child since January 2007. The mother testified that she was not in arrears regarding her rental payments. The daughter testified that they have an abundant supply of groceries. The evidence also established that the mother was employed, working two jobs at the time of the proceeding.
The evidence established that DHR had made travel arrangements to transport the child from Athens to Huntsville for supervised visitations with the mother. Shelby testified that the mother visits the child when DHR transports the child. D.G. testified that he had offered to transport the mother from Huntsville to Athens to visit with the child at his home, but the mother had not accepted his offer. D.G. testified that the mother had visited the child at D.G.'s residence on Christmas day 2006 and once in January 2007. The mother stated that, although she drives the son's or the daughter's cars on occasion, she does not visit the child more often because it is too far to drive or because the child had been unavailable for visits due to her extracurricular activities.
The evidence established that the mother had been receiving approximately $570 in monthly child support from the child's father. The evidence further established that that child support was solely attributed to the child. However, D.G. testified that the mother had only provided him $170 on the child's behalf since the time the child had been in his care. The mother testified that she had given the child $50 to $60 at a time and that she had purchased clothing and other items for the child. She also stated that she paid house-hold expenses with the remaining child support. Although D.G. had received some child support from the child's father, a court suspended the father's child-support obligation pending the results of the dependency proceeding. *Page 554 
Shelby testified that the mother had not complied with DHR's requests regarding services. She stated that the last request with which the mother had complied was a request that she attend a counseling session in either late November or early December 2006. The only goal established by DHR that the mother had met at the time of the proceeding in this matter was the goal of obtaining housing.
On appeal, the mother first argues that the juvenile court erred by adjudicating the disposition of the child, i.e., by awarding D.G. custody of the child, without affording her notice and an opportunity to be heard. In its petition, DHR sought a judgment awarding D.G. legal and physical custody of the child. The juvenile court held a hearing regarding the merits of DHR's dependency petition, which included its request to award D.G. physical and legal custody of the child. Therefore, the mother was afforded notice and a hearing regarding the disposition of the child. Accordingly, we conclude that the juvenile court did nor err on this ground.
Next, the mother argues that the juvenile court erred in adjudicating the child dependent.
 "`In matters concerning child custody and dependency, the trial court's judgment is presumed correct on appeal and will not be reversed unless plainly and palpably wrong.' Ex parte T.L.L., 597 So.2d 1363, 1364 (Ala.Civ.App. 1992); see also Ex parte R.E.C., 899 So.2d 272, 279 (Ala. 2004). Additionally, in Ex parte Anonymous, 803 So.2d 542[, 546] (Ala. 2001), the Alabama Supreme Court stated:
 "`The ore tenus rule provides that a trial court's findings of fact based on oral testimony "have the effect of a jury's verdict," and that "[a] judgment, grounded on such findings, is accorded, on appeal, a presumption of correctness which will not be disturbed unless plainly erroneous or manifestly unjust." Noland Co. v. Southern Dev. Co., 445 So.2d 266, 268 (Ala. 1984). "The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses." Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986).'"
J.W. v. C.H., 963 So.2d 114, 119 (Ala.Civ.App. 2007). Furthermore, "[a] trial court's determination that a child is dependent must be supported by clear and convincing evidence. Ala. Code 1975, § 12-15-65(e)." H.A. v. Limestone CountyDep't of Human Res., 628 So.2d 948, 949 (Ala.Civ.App. 1993). "Section 12-15-1[(10)], Ala. Code 1975, defines `dependent child' and provides numerous bases under which a court may determine a child to be dependent." J.W.,963 So.2d at 120. Additionally, "[t]he trial court . . . `may find dependency based on the totality of the circumstances.'"R.G. v. Calhoun County Dep't of Human Res.,716 So.2d 219, 221-22 (Ala.Civ.App. 1998) (quoting J.M. v. State Dep'tof Human Res., 686 So.2d 1253, 1255 (Ala.Civ.App. 1996)).
The juvenile court received evidence indicating that the mother and the stepfather had engaged in acts of domestic violence against each other. Shelby's testimony established that the child had witnessed those acts. Furthermore, Shelby's testimony established that the mother had involved the son and the daughter in physical altercations she had had with the stepfather. Although the mother had separated from the person with whom she had engaged in acts of domestic violence, i.e., the stepfather, the juvenile court received evidence tending to establish that the mother and the *Page 555 
child had engaged in a physical altercation. Despite the mother's testimony indicating that she had inflicted corporal punishment for the child's failure to return home over a weekend, the juvenile court could have found the mother's testimony to be not credible.
To address the mother's anger-management and domestic-violence issues, DHR had offered the mother counseling. However, the evidence established that the mother had failed to consistently attend counseling sessions. Although the mother stated that the sessions conflicted with her work schedule, the mother later admitted that she had failed to attend because she believed that she was not "getting [anything] out of it." Although the mother had obtained housing and had maintained employment, the juvenile court could have concluded that the mother's unwillingness to obtain counseling to address DHR's primary concern, i.e., the mother's domestic-violence issues, rendered her unable to properly care for the child. On this basis, the juvenile court could have concluded that the child is a dependent child because she "is without proper parental care and control necessary for the child's well-being because of the faults or habits of the child's parent[]. . . ." § 12-15-1(10)j., Ala. Code 1975. Considering the totality of the circumstances, we conclude that clear and convincing evidence supports the juvenile court's judgment finding the child dependent.
The mother also argues that the juvenile court erred by awarding custody of the child to D.G. Regarding the disposition of a dependent child, we have previously stated:
 "This court has consistently held that, once a child is found to be dependent, the primary issue is to determine an appropriate placement that serves the best interest and welfare of that child.
 "`Once a trial court has found a child to be dependent, § 12-15-71, Ala. Code 1975, authorizes the court to make a number of dispositions, including a transfer to "[a] relative or other individual who, after study by the department of human resources, is found by the court to be qualified to receive and care for the child." The paramount considerations in such a situation are the welfare and best interests of the child. . . . Clark v. Holland, 274 Ala. 597, 150 So.2d 702 (1963).'"
M.D.B.A v. J.L.H., 761 So.2d 249, 254
(Ala.Civ.App. 1999) (quoting D.K.G. v. J.H.,627 So.2d 937, 938 (Ala.Civ.App. 1993)).
The evidence established that DHR had issued a favorable home-study report regarding D.G. Additionally, D.G. testified that the child had been progressing academically while in his care. Accordingly, the evidence supports a judgment concluding that the best interest of the child would be served by awarding custody of the child to D.G.
Last, the mother argues that the juvenile court erred by awarding her visitation rights that must be exercised solely at the discretion of D.G. Regarding visitation rights, this court has previously stated:
 "`"The determination of proper visitation . . . is within the sound discretion of the trial court, and that court's determination should not be reversed absent a showing of an abuse of discretion." Ex parte Bland, 796 So.2d 340 (Ala. 2000). "[C]ases in Alabama have consistently held that the primary consideration in setting visitation rights is the best interests and welfare of the child. Furthermore, each child visitation case must be decided on its own facts and circumstances." Fanning v. Fanning, 504 So.2d 737, 739 (Ala.Civ.App. 1987) *Page 556 
(citations omitted). "When the issue of visitation is determined after oral proceedings, the trial court's determination of the issue will not be disturbed absent an abuse of discretion or a showing that it is plainly in error. Andrews v. Andrews, 520 So.2d 512 (Ala.Civ.App. 1987)." Dominick v. Dominick, 622 So.2d 402, 403
(Ala.Civ.App. 1993).'"
L.L.M. v. S.F., 919 So.2d 307, 314 (Ala.Civ.App. 2005) (quoting K.L.U. v. M.C., 809 So.2d 837, 840-41
(Ala.Civ.App. 2001)). However, we also have stated that a juvenile court errs when it grants a noncustodian visitation rights exercised solely at the custodian's discretion. Seeid; K.L.U., 809 So.2d at 841. Because the juvenile court granted the mother visitation rights, to be exercised solely at D.G.'s discretion, we reverse the judgment insofar as it awards visitation rights.
In conclusion, we affirm the judgment insofar as it adjudicated the child dependent and awarded D.G. custody of the child. We reverse the judgment insofar as it awarded the mother visitation rights that are to be exercised solely at D.G.'s discretion. We remand the cause to the juvenile court to enter a judgment fashioning a visitation award in a manner consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.