PER CURIAM.
L.M. (“the father”) and J.K. (“the mother”) separately appeal from a judgment entered by the Shelby Juvenile Court (“the juvenile court”) that terminated their parental rights to their three children (“the children”).[1] This court, ex mero motu, consolidated the appeals. For the reasons set forth in this opinion, we reverse the juvenile court’s judgment.

Background and Procedural History

The record reveals that the children were first removed from the custody of the mother and the father, who lived together but were not married, in December 2007 when the mother gave birth to the youngest child and both the mother and that *380 child tested positive for cocaine. In December 2008, the children, who had been in the custody of the Shelby County Department of Human Resources (“DHR”), were returned to the mother and the father. The mother and the father were ordered to continue random drug testing and, the record reveals, the mother and the father missed several drug screens in the latter part of 2008 and throughout early to mid 2009. On August 31, 2009, the juvenile court held the mother and father in contempt for failing to attend drug testing and for failing to meet with in-home service providers and counselors. On September 16, 2009, the children were removed from the home of the mother and the father for a second time. After the mother tested positive for cocaine on September 17, 2009, DHR filed its first petitions to terminate the parental rights of the mother and the father.
On March 9, 2010, the juvenile court, after conducting a hearing, denied DHR’s petitions to terminate the parental rights of the mother and the father based in part on evidence indicating that neither the father nor the mother had tested positive for any illegal drugs since the children were removed from their home in September 2009. The juvenile court ordered, among other things, that the children remain in the custody of DHR; that the mother and the father continue with services arranged by DHR; that the mother and the father continue regular drug and alcohol testing; and that the mother participate in regular drug and alcohol counseling.
On May 20, 2010, the mother tested positive for alcohol and an opiate. On June 12, 2010, the mother tested positive for ethyl glucuronide, which, the juvenile court found, suggested that the mother had been exposed to alcohol. On July 22, 2010, the juvenile court found the mother in contempt based on the positive drug and alcohol screens. On August 9, 2010, DHR filed its second petitions to terminate the parental rights of the mother and the father to the children in case nos. JU-07-1075.03, JU-07-1076.03, and JU-07-1077.03. DHR alleged, among other things, that the mother and the father were not able or willing to provide a fit and suitable home for the children. After conducting an ore tenus hearing on February 14, 2011, the juvenile court entered a single judgment on March 31, 2011, terminating the parental rights of the mother and the father. After the mother’s post-judgment motion was denied by operation of law, both parties appealed.

Issues

On appeal, the mother and the father argue that, based on the doctrine of res judicata, the juvenile court erred in considering evidence in support of terminating their parental rights at the February 2011 termination hearing of matters that occurred before the entry of the March 2010 judgment denying DHR’s first petitions to terminate their parental rights. They also argue that DHR failed to present clear and convincing evidence sufficient to terminate their parental rights.

The Res Judicata Argument

The father argues that the doctrine of res judicata should have barred the admission of evidence at the February 2011 termination hearing that related to facts and circumstances that existed before the entry of the March 2010 judgment denying DHR’s first petitions to terminate the parental rights of the mother and the *381 father. The mother also argues that the doctrine of res judicata should prevent DHR from having a “second bite at the apple,” i.e., a second chance to litigate termination-of-parental-rights petitions that were largely based on evidence that existed, and was heard by the juvenile court, before the juvenile court denied DHR’s first termination-of-parental-rights petitions in March 2010.
“The elements of res judicata, or claim preclusion, are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits. Hughes v. Allenstein, 514 So.2d 858, 860 (Ala.1987). If those four elements are present, any claim that was or could have been adjudicated in the prior action is barred from further litigation....
“... The determination of whether the cause of action is the same in two separate suits depends on whether the issues in the two actions are the same and whether the same evidence would support a recovery for the plaintiff in both suits. Dominex, Inc. v. Key, 456 So.2d 1047, 1054 (Ala.1984). Stated differently, the fourth element is met when the issues involved in the earlier suit comprehended all that is involved in the issues of the later suit. Adams v. Powell, 225 Ala. 300, 142 So. 537 (1932).”
Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 725-26 (Ala.1990).
Our research reveals no Alabama case-law that addresses the precise question presented on appeal, i.e., whether the doctrine of res judicata barred DHR, in the second termination-of-parental-rights hearing, from presenting evidence that existed before the entry of the judgment denying DHR’s first petitions to terminate the parental rights of the mother and the father. However, we are not without guidance from other jurisdictions. See In the Matter of Newman, 49 Or.App. 221, 619 P.2d 901 (1980); In re Interest of V.B., 220 Neb. 369, 370 N.W.2d 119 (1985); People in Interest of J.R., 711 P.2d 701 (Colo.App.1985); In Interest of A.S., 12 Kan.App.2d 594, 752 P.2d 705 (1988); and Scott v. Prince George’s Cnty. Dep’t of Soc. Servs., 76 Md.App. 357, 545 A.2d 81 (1988). Because the factual background and arguments made by the appellant in Scott v. Prince George’s County Department of Social Services, supra, are the most similar to the factual background and arguments made in the present case, a detailed discussion of that case ensues.
In Scott, the mother, Martine Scott (“Scott”), gave birth to twins in November 1980, and the Prince George’s County Department of Social Services (“the Department”) became involved with Scott and the twins in January 1981. 76 Md.App. at 364-65, 545 A.2d at 84-85. A Maryland juvenile court placed the twins in the Department’s care in January 1981, and the twins were returned to Scott and subsequently returned to the Department’s care several times between February 1981 and October 1982, at which point Scott apparently abandoned the twins with a non-English-speaking babysitter. 76 Md.App. at 365-66, 545 A.2d at 85-86. In August 1983, the Department filed a petition to terminate Scott’s parental rights to the twins, and, in February 1985, a Maryland trial court denied the Department’s petition but ordered Scott to participate in psychological counseling, to disclose her mother’s address so the Department could investigate her as a possible relative placement for the twins, to execute a service agreement with the Department, and to cooperate with the Department. 76 Md.App. at 367, 545 A.2d at 86. After Scott failed to comply with the provisions of the *382 trial court’s judgment, the Department, in March 1986, filed a second petition to terminate Scott’s parental rights to the twins. 76 Md.App. at 369, 545 A.2d at 87. The trial court allowed the Department to present evidence that had been presented at the first termination trial, and, at the conclusion of the trial, the trial court granted the Department’s petition. Id.
On appeal, Scott argued, among other things, that the doctrine of res judicata prevented the Department from using evidence that was presented to the trial court in the first termination trial against her in the second termination trial and that the trial court could only consider evidence of facts that occurred after the first judgment denying the Department’s petition to terminate her parental rights. The Maryland Court of Appeals began its discussion of Scott’s res judicata argument by noting that it would apply the “same evidence test” to the two termination trials to determine whether the cause of action was the same in both cases for res judicata purposes. 76 Md.App. at 375, 545 A.2d at 90. As we set forth above, Alabama also follows the “same evidence test” for determining whether two causes of action are the same for res judicata purposes. See Dairyland Ins. Co. v. Jackson, supra. The Maryland Court of Appeals stated:
“Applying the same evidence test to the two termination trials in the case sub judice, we cannot conclude that the same evidence could have sustained both actions. The trial court found at the first termination trial that the Department had failed to establish, by clear and convincing evidence, that it would be in the best interests of the twins to forever sever their ties with their mother. But the first trial did not result in the return of the twins to appellant. The trial judge in the first action gave the proverbial ‘second chance’ to appellant — she was to follow the terms of the court order he issued. It was appellant’s failure to make any attempt to comply with that order which made the second trial qualitatively different from the first.
“Additionally, res judicata extends ‘only to the facts and conditions as they existed at the time of the first judgment and does not bar the fresh litigation of an issue which is appropriately subject to periodic redetermination, as subsequent facts and changed conditions may alter the status of the thing being evaluated.’ Towers v. Director, Patuxent Institution, 18 Md.App. 248, 250, 306 A.2d 597 (1973) (emphasis added). See also Whittle v. Board of Zoning Appeals of Baltimore County, 211 Md. 36, 45, 125 A.2d 41 (1956);[2] Jack v. Foster Branch Homeowners Ass’n, 53 Md.App. 325, 333, 452 A.2d 1306 (1982). Child welfare seems to be a particularly appealing subject for periodic redetermination because children can be quickly and irretrievably scarred by negative circumstances. Changes in custody decrees are a classic example.![3]] ...
“In the case sub judice, following appellant’s line of reasoning to its logical *383 conclusion could produce disturbing practical results. The Department would be required to wait after any unsuccessful termination trial until independent new evidence reached a clear and convincing level. Without the evidence of prior events, it would be a rare situation indeed where the independent new evidence would be egregious enough to sustain a new action within a short period of time. Thus, while the parent or parents might be benefitted, the children would suffer.”
76 Md.App. at 375-77, 545 A.2d at 90-91.
After a discussion of cases in other jurisdictions that had reached the same conclusion, i.e., that the doctrine of res judicata did not act as a bar in a second termination hearing to presenting evidence of matters that occurred before the first termination hearing, the Maryland Court of Appeals limited its holding by stating:
“If the State had brought the second petition to terminate appellant’s rights and had alleged nothing new, there is no doubt that it would be barred by res judicata. But there were new facts and circumstances introduced at the second action which could not have been introduced at the first. Although the court did not terminate appellant’s parental rights in the first action, her children remained in the custody of the State and she was ordered to work with the Department toward reunification. In order to help appellant toward this end, the trial court ordered that there be a private psychological therapist for appellant, contact with her mother, visits with the children, and counselling for the children. It appears in the ease sub judice that the Department made an effort to comply with the order. Appellant rejected a service agreement designed to facilitate reunification. She did not regularly write to the children. There was no effort on her part to improve the unhappy circumstances which had led to the Department’s obtaining custody of the children in the first place. The Department filed the second petition when it became clear that appellant’s continued refusal to work toward reunification had resulted in stagnation, with no likelihood of remedy. Regardless of any difficulties appellant may have had with the Department, the record shows that she made no effort to cooperate with them and thus retain her parental rights. All of the foregoing amounted to substantial new reasons for termination. The new facts created a qualitatively different situation: the second cause of action was not identical, and therefore not barred by res judicata. Because the new facts had to be put into context, the trial court was correct in admitting evidence of events prior to the first action at the second proceeding. The trial court thus correctly weighed all evidence pursuant to the criteria set forth in [Maryland’s termination-of-parental-rights statute] to find that it was in the best interests of the children to terminate appellant’s parental rights.”
76 Md.App. at 379-80, 545 A.2d at 92 (footnote omitted; emphasis added).
We think the rationale used by the Maryland Court of Appeals should apply to this case. The record reveals that DHR filed second petitions to terminate the parental rights of the mother and the father after the mother failed to comply with the juvenile court’s order denying DHR’s first petitions to terminate her parental rights because she continued to test positive for drugs and/or alcohol after the first judgment denying DHR’s petitions to terminate parental rights. In its second petitions, DHR alleged that the mother and the father, five months after the juvenile court had given them the “proverbial sec *384 ond chance,” were still unable or unwilling to provide a fit and suitable home for the children. See In re Interest of V.B., 220 Neb. at 372, 370 N.W.2d at 122 (noting that the trial court could not have used evidence of matters that occurred before the entry of the first judgment denying termination of parental rights as the sole basis for granting a second petition to terminate parental rights but that the trial court could use evidence of matters that occurred before and after the first termination trial to determine if there was a change in circumstance or “stagnation of conditions” to terminate parental rights at the second termination trial). DHR presented new evidence at the second termination trial that could not have been presented at the first termination trial, and, thus, the second termination actions were not based on evidence that was the same as the evidence presented at the first trial. Accordingly, we conclude that the doctrine of res judicata did not prevent presentation of evidence of matters that occurred before the first termination trial in the second termination trial and that the juvenile court properly weighed all the existing evidence to determine whether there was clear and convincing evidence sufficient to support the termination of the parental rights of the mother and the father.[4]

The Judgment Terminating Parental Rights

In its judgment terminating parental rights, the juvenile court made extensive specific findings of fact. Although some of those facts are set forth above, they bear repeating for a full understanding of the juvenile court’s reasons for terminating the parental rights of the mother and the father. The juvenile court made the following findings of fact:
“1. This is the second petition for termination of the parental rights of the parents.
“2. In December of 2007, the children were originally removed from the parents’ home after the youngest child ... tested positive for cocaine at birth, which was caused by the mother’s use of cocaine during pregnancy.
“3. In December 2008, the children were returned to the parents.
“4. September 16, 2009, the children were again removed from the parents’ home.
“5. On September 17, 2009, the [mjother again tested positive for cocaine, and [DHR] filed its first Petition for Termination of Parental Rights.
“6. [On] March [9], 2010, the original petition to terminate parental rights was denied by Order of this Court. The children were not immediately returned to the parents, but remained in the custody of DHR.
“7. On April 1, 2010, the parties held an [Individualized Service Plan (TSP’) ] meeting wherein the [m]other ... agreed to enroll in a 28 day in-house drug treatment program, but [she] failed to complete that program.
“8. The [mjother testified that she contacted numerous agencies and drug treatment programs including all the *385 ones given to her by DHR at the April 1, 2010 ISP meeting. She stated that she was not accepted into any of the in-house drug treatment programs because she had been drug free and sober for more than six months and none of the agencies and programs w[ere] equipped to detox her off of the drug suboxone. She had been prescribed suboxone by a doctor to treat her for drug addiction.
“9. Prior to May 20, 2010, [the moth-' er] had been drug free and sober for approximately [eight and one-half] months. During the 24 days between May 20 and June 12, 2010, she was tested [6] different times. One test was positive for a Lortab and alcohol; one was positive for alcohol only; and one had an abnormal creatinine level. The other three tests were negative for drugs and alcohol.
“10. On May 20, 2010, the [m]other ... tested positive for alcohol and an opiate. She admitted to drinking vodka and taking a Lortab that she had left over from a prior valid prescription. Six days later on May 26, 2010, she had a negative drug and alcohol test.
“11. On June 1, 2010, [the mother’s] test results showed an abnormal creati-nine level but negative for drugs and alcohol. She was again tested on June 2, 2010, with negative results including a normal creatinine level.
“12. On June 12, 2010, [the mother] tested positive for Ethyl Glucuronide, which suggests exposure to alcohol.
“13. On June 16, 2010, [the mother] entered Hill Crest Hospital for suboxone and alcohol detox. This was a 7 day hospitalization program.
“14. On July 22, 2010, this Court cited [the mother] for contempt based on the positive drug/alcohol tests of May 20, 2010 and June 12, 2010. She was ordered to serve 24 hours in the Shelby County Jail.
“15. On Ju[ne] 23, 2010, [the mother] entered Alabama Psychiatric Services’ Chemical Dependency Partial Hospitalization Program which she completed on July 15, 2010.
“16. On August 9, 2010, DHR filed its second Petition for Termination of Parental Rights.
“17. On December 14, 2010, the [m]other’s drug test showed an abnormal creatinine level. She tested negative for drugs and alcohol on December 14. Further she was also tested in the month of December on the 2, 4, 6, 9, 26[,] and 30, all these tests were negative with normal creatinine levels.
“18. All of the mother’s drug tests have been negative with normal creati-nine levels since December 14, 2010.
“19. The [fjather ... has not missed a drug test nor tested positive for alcohol or drugs in over 18 months.
“20. [The mother] is currently participating in Alabama Psychiatric Services (APS) Aftercare Program which includes among other things meeting with her psychiatrist every two weeks and meeting with her medical doctor every six months.
“21. Through APS, [the mother] was introduced to- the [Alcoholics Anonymous] program. She has been participating in meetings 3 to 4 times per week since entering the program. She has a permanent sponsor who testified that [the mother] is doing exceptionally well in the program. She is working on the 12 step program and is currently on Step 4.
“22. There is no problem with the physical home of the parents which would itself prevent return of the children.
*386 “23. The [fjather ... has complied with all the requirements of DHR, but he continues to reside with the mother.
“24. The mother ... is unable to stop using drugs and alcohol. Almost immediately after the denial of [DHR]’s original petition to terminate her parental rights, she began drinking a pint to a pint and a half of alcohol per day, and hiding it from the father. She entered Hillcrest Hospital for detox purposes in June 2010 and then treatment with Alabama Psychiatric Services (APS) which recommended she attend weekly meetings with their provider as well as [Alcoholics Anonymous] meetings, beginning with 90 meetings in 90 days. The mother testified she had not attended any APS weekly meetings since late November.
“25. The parents have been provided every service known to [DHR],
“Considering the testimony and exhibits listed above, in addition to the finding made in this Court’s Order dated March 9, 2010, this Court finds that the reasonable efforts made by DHR towards the rehabilitation of the parents have failed. This Court finds that the parents have failed to show that [the m]other may remain free of illegal drugs and alcohol for a sustainable period of time. Similarly, the putative [flather remains with the [m]other and has no intentions of leaving her. Thus, the parents of the children have failed to adjust their lifestyle and circumstances to meet the needs of the minor children.”
Under Alabama law,
“[a] juvenile court is required to apply a two-pronged test in determining whether to terminate parental rights: (1) clear and convincing evidence must support a finding that the child is dependent; and (2) the court must properly consider and reject all viable alternatives to a termination of parental rights. Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990).”
B.M. v. State, 895 So.2d 319, 331 (Ala.Civ.App.2004). In order to meet the first prong of the test, DHR must prove by clear and convincing evidence that grounds for termination exist. See § 12-15-319, Ala.Code 1975; and Bowman v. State Dep’t of Human Res., 534 So.2d 304, 305 (Ala.Civ.App.1988). Section 12-15-319 provides, in pertinent part:
“(a) If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents.”
The juvenile court was required to consider the factors set forth in § 12-15-319(a)(1) — (12) to determine whether the father and the mother were unable or unwilling to discharge their parental responsibilities to and for the children. The juvenile court found that the mother was unable to remain free of alcohol and drugs for a “sustainable period of time,” see § 12-15-319(a)(2), that reasonable efforts made by DHR toward the rehabilitation of the mother and the father had failed, see § 12-15-319(a)(7), and that the mother and the father had failed to adjust their circumstances to meet the needs of the children, see § 12-15-319(a)(12).
“A juvenile court’s factual findings, based on ore tenus evidence, in a judgment terminating parental rights are presumed to be correct and will not be disturbed unless they are plainly and pal *387 pably wrong.” J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1183 (Ala.Civ.App.2007). Accordingly, “we will reverse a juvenile court’s judgment terminating parental rights only if the record shows that the judgment is not supported by clear and convincing evidence.” Id. However, DHR, as the petitioner, had the burden of proving, by clear and convincing evidence, that the parental rights of the mother and the father should be terminated. “Clear and convincing evidence” is “ ‘evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.’ ” L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002) (quoting § 6-11-20(b)(4), Ala.Code 1975).
We will begin our discussion with the arguments presented by the father. On appeal, the father argues that (1) the juvenile court violated his constitutional rights by concluding that his failure to sever his relationship with the mother was a sufficient ground for terminating his parental rights and (2) that DHR failed to present clear and convincing evidence sufficient to support termination of his parental rights. As argued by DHR in its brief on appeal, the father failed to present his constitutional argument to the juvenile court, and, thus, he is presenting that argument for the first time on appeal. Accordingly, we cannot address that argument. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“[An appellate cjourt cannot consider arguments raised for the first time on appeal; rather, [the appellate court’s] review is restricted to the evidence and arguments considered by the trial court.”). However, we will consider the father’s argument that DHR failed to present clear and convincing evidence sufficient to terminate his parental rights to the children.
The father contends that his failure to end his relationship with the mother is not clear and convincing evidence of his failure to adjust his circumstances to meet the needs of the children. We agree, as the father contends, that the juvenile court terminated the father’s parental rights based only on the undisputed fact that the father continued to reside with the mother who, the juvenile court found, was unable to stop using drugs and alcohol for a “sustainable period of time.” Thus, we must consider whether the juvenile court’s sole basis for terminating the father’s parental rights was sufficient to support its judgment.
This court has affirmed judgments terminating the parental rights of a parent when that parent has failed or refused to remove himself or herself from a living situation that presented a danger to the parent’s child, see C.W. v. State Dep’t of Human Res., 826 So.2d 171, 173-74 (Ala.Civ.App.2002) (determining that the children in question were dependent after considering the mother’s refusal to sever her relationship with an abusive boyfriend, whose attitude towards DHR hindered the mother’s ability to reunite with her children), even if the child’s other parent was the individual that presented a danger to the child. See B.M. v. State, 895 So.2d at 334 (when clear and convincing evidence indicated that the mother had abused one of the parties’ children and the father testified that he did not believe the mother had abused the child, this court affirmed the judgment terminating the parental rights of the father on the basis that the trial court could have concluded that the father, who had undisputedly never harmed the children, could not protect the children from the danger of harm presented by the mother). Thus, the juvenile *388 court’s judgment terminating the father’s parental rights can be affirmed if clear and convincing evidence shows that the father was unable to protect the children from the danger presented by the mother’s alleged inability to remain alcohol and drug free. Id.
After a thorough review of the record, this court is unable to find evidence sufficient to support a finding that the father could not, or was unwilling to, protect the children from the potential harm presented by the mother’s inability to remain alcohol and drug free. There is nothing in the record before this court indicating that the father had ever failed to protect the children from the mother when she was under the influence of drugs or alcohol. In fact, the father testified that he recognized the danger presented to the children if the mother continued to abuse alcohol, and he stated that he was willing to sever his relationship with the mother if the mother continued on a path of substance abuse.
Moreover, as the father argues on appeal, there is no indication in the record that DHR ever conveyed to the father that he needed to sever his relationship with the mother in order to be reunited with the children. A parent’s parental rights cannot be terminated on the ground that the parent did not adjust his or her circumstances to meet the needs of the children, or on the ground that efforts to rehabilitate the parent had failed, when the sole barrier to reunification was not communicated to the parent by DHR. See H.H. v. Baldwin Cnty. Dep’t of Human Res., 989 So.2d 1094, 1105 (Ala.Civ.App.2007) (opinion on return to remand) (Per Moore, J., with two judges concurring in the result) (“The natural starting point in any fair and serious attempt to rehabilitate the parent and to reunite the parent with the child is identification of that characteristic, conduct, or circumstance that renders the parent unfit or unable to discharge his or her parental responsibilities to the child. Once DHR identifies the source of parental unfitness, the overarching goal of family reunification requires DHR to communicate its concerns to the parent and to develop a reasonable plan with the parent that is tailored toward the particular problem© preventing the parent from assuming a proper parental role.”).
In the present case, there was not clear and convincing evidence presented that anyone from DHR had ever informed the father that his maintaining a household or a relationship with the mother was a barrier, let alone the sole barrier, to his reunification with his children. The father testified that he had not been told by DHR to sever his relationship with the mother, and the representative from DHR that testified during the February 2011 termination hearing could not confirm that anyone from DHR had ever conveyed to the father that he was required to sever his relationship with the mother before DHR would consider returning the children to his custody. Thus, because there was not sufficient evidence from which the juvenile court could have concluded that the father had been informed that his failure to sever his relationship with the mother would prevent the return of the children to his custody, there was not clear and convincing evidence to support a finding that the father exhibited a “[ljack of effort ... to adjust his ... circumstances to meet the needs of the childfren] in accordance with agreements reached, including agreements reached with local departments of human resources ..., in an administrative review or a judicial review.” § 12-15-319(a)(12) (emphasis added).
Furthermore, there was not clear and convincing evidence to support a finding that DHR’s attempts to rehabilitate the *389 father had failed. As stated above, DHR did not provide the father the opportunity to correct the circumstances that presented a barrier to reunification because DHR did not inform him that such a barrier existed. Also, the juvenile court specifically found that the father had not tested positive for drugs or alcohol in approximately 18 months, that he had done everything that DHR had required him to do, and that there was no problem with the father’s home that would otherwise prevent the father’s reunification with the children. In short, the only “new evidence” that DHR presented regarding the father in the second termination trial tended show that the father had faithfully continued to visit the children and that he had not missed or failed a single drug screen.
Our review of the record has failed to reveal clear and convincing evidence to support a conclusion that the father was unable or unwilling to discharge his responsibilities to and for the children or to prove that the father’s conduct or condition rendered him unable to properly care for the children and that that conduct or condition was unlikely to change in the foreseeable future. § 12-15-319. The record revealed that the father consistently visited the children, that he was physically and financially capable of caring for the children, and that there were no problems with the father’s home that would prevent his reunification with the children. Accordingly, that part of the juvenile court’s judgment terminating the father’s parental rights is reversed.
In light of our conclusion that there was not clear and convincing evidence to support termination of the father’s parental rights, we must also reverse the judgment insofar as it terminates the mother’s parental rights. Our review of the record reveals that DHR presented clear and convincing evidence sufficient for the juvenile court to have concluded that the mother could not remain free of drugs and alcohol for a “sustainable period of time” and, thus, that there was sufficient evidence from which the juvenile court have concluded that the children were dependent based on the mother’s conduct, condition, and circumstances. See § 12 — 15—319(a)(2). However, there is no evidence in the record indicating that the welfare of the children would be endangered by the mother if the father was in the home to supervise the family. In other words, we can find nothing in the record to support a conclusion that the father would be unable to protect the children from the potential harm presented by the mother’s presence in the home with the children. See T.B. v. DeKalb Cnty. Dep’t of Human Res., 12 So.3d 90, 99 (Ala.Civ.App.2008) (plurality opinion) (reversing a judgment terminating the parental rights of the mother in light of the fact that the judgment terminating the parental rights of the father had been reversed when there was no indication that the conduct or condition of the mother that hindered her ability to independently meet the needs of the children presented a danger to the children while the father remained in the home to supervise the family).
As the mother points out in her brief to this court, and as noted above, a juvenile court is required to consider viable alternatives to terminating a parent’s parental rights. B.M. v. State, 895 So.2d at 331. From the facts in the record before this court in this particular case, we cannot determine the basis for DHR’s failure to recommend that the custody of the children be returned to the father with orders that he strictly supervise the mother’s con *390 tact with the children. Returning custody of the children to the father while continuing DHR’s ability to supervise the family appears to be a viable alternative to termination of the mother’s parental rights in this case. Accordingly, we reverse the judgment of the juvenile court insofar as it terminates the mother’s parental rights, and we remand the cause for further proceedings consistent with this opinion.
2100733 — REVERSED AND REMANDED.
2100773 — REVERSED AND REMANDED.
MOORE, J., concurs.
BRYAN and THOMAS, JJ„ concur specially, with writings.
THOMPSON, P.J., and PITTMAN, J., concur in the result, without writings.

. There were three separate actions — one for each child — in the juvenile court. The juvenile court entered a single judgment that applied to all three actions.

. In City of Mobile v. Cunningham, 46 Ala.App. 461, 466, 243 So.2d 723, 727 (1971), our supreme court quoted with approval from Whittle v. Board of Zoning Appeals of Baltimore County, 211 Md. 36, 125 A.2d 41 (1956), which is cited above in Scott, and held that the doctrine of res judicata would not apply to an application for a use variance if the proponent could show that there were new facts that tended to show changed conditions and circumstances that arose after a request for a variance had been previously denied.

. Our supreme court, in Ex parte Snider, 929 So.2d 447, 458 n. 9 (Ala.2005), likewise acknowledged that matters of custody and visitation “ 'are never res judicata’ ” upon a showing of changed circumstances.

. Such a conclusion finds support in our caselaw regarding termination of parental rights, such as the well settled principle that, “when deciding whether grounds to terminate parental rights exist, the juvenile court is not limited to evidence of current conditions; it may also consider the past history of a parent.” R.L.M.S. v. Etowah Cnty. Dep’t of Human Res., 37 So.3d 805, 808 (Ala.Civ.App.2009). This court has also recognized that a finding of dependency may be based on the totality of the circumstances. See V.G. v. Madison Cnty. Dep’t of Human Res., 989 So.2d 550, 554 (Ala.Civ.App.2008); J.W. v. C.H., 963 So.2d 114, 120 (Ala.Civ.App.2007); and R.G. v. Calhoun Cnty. Dep’t of Human Res., 716 So.2d 219, 221-22 (Ala.Civ.App.1998).