THOMAS, Judge.
P.S. (“the mother”) appeals the judgment of the Jefferson Juvenile Court terminating her parental rights to M.S. (“the *793 child”) on August 23, 2012.[1] We reverse the judgment and remand the cause for further proceedings consistent with this opinion.
In 2008, the Jefferson County Department of Human Resources (“DHR”) became involved with the mother, and she lost custody of her two older children, R.O. and K.F. (sometimes referred to collectively as “the siblings”), after DHR initiated dependency proceedings relating to the siblings.[2] DHR reported that the mother had failed to protect the siblings when the mother’s then boyfriend hit K.F. with a belt, leaving severe bruises on his legs, arms, face, and back. In 2011, DHR became aware that the mother was pregnant with the child. It had “an alert” sent to the University of Alabama at Birmingham Hospital for it to inform DHR when the mother gave birth to the child. The child was born on April 19, 2011.
On April 22, 2011, DHR filed a complaint in the juvenile court, alleging that the child was dependent. DHR reported that the mother had “failed to inform her DHR worker that she was pregnant,” that her “past issues suggest she will not be able to properly care for the child,” and that the mother had lost custody of the siblings. The juvenile court issued a pickup order on April 22, 2011, and, that same day, DHR took custody of the child.
A shelter-care hearing was held on April 25, 2011, and, in an order signed by Judge W. Alan Summers that same day, custody of the child was awarded to the child’s maternal great-aunt and supervised visitation was awarded to the mother. The order included a specific finding that reasonable efforts to prevent the removal of the child from the mother had been unsuccessful. Those efforts were described as “investigation of allegations; in-home services; counseling; relative resources; [and] home evaluation.”
An order signed by Judge Elise Barclay indicates that a “preliminary hearing” was held June 1, 2011. The mother and her attorney were present. Apparently DHR and the mother submitted a “memorandum agreement” regarding the child and R.O.[3] The memorandum agreement is not included in the record on appeal. The child was again adjudicated dependent, and he remained in the custody of his maternal great-aunt. The mother retained a right to supervised visitation, and she was required to participate in counseling, to complete a parenting-skills class, and to obtain stable housing and employment. According to DHR, the child’s maternal great-aunt relinquished custody of the child to DHR on June 27, 2011.
A dispositional hearing was held on September 14, 2011, regarding the child and the siblings. An order signed by Judge Barclay and dated September 14, 2011, indicates that the child remained dependent and that the mother retained her right to supervised visitation with the child. In that same order, DHR was relieved of the responsibility to make reasonable efforts to reunite the child with the mother. At that time the child was five months old.
On November 18, 2011, DHR filed a petition seeking the termination of the mother’s parental rights to the child. At that time the child had been in foster care for less than five months. DHR asserted *794 that the mother had failed to provide for the material needs of the child, to obtain and maintain stable housing and employment, to attend parenting classes, or to visit the child.[4] DHR further asserted that the mother’s parental rights should be terminated because the child was dependent, the mother was not a fit and suitable parent, DHR had made reasonable efforts to reunite the mother and the child, which were unsuccessful, and no viable alternatives to the termination of the mother’s parental rights existed.
On February 28, 2012, a permanency hearing was held by Judge Sandra Storm.[5] An order dated February 28, 2012, indicates that the mother was required to participate in counseling, to complete parenting classes, and to obtain or maintain suitable housing and employment. The order specifically notes that “DHR was relieved of Reasonable Efforts on Sept. 15, 2011[,] due to lack of cooperation and progress with the [Individualized Service Plan] process.” The permanency plan for the child was “permanent relative placement” or “adoption with no identified resource”; the order indicates that the child’s foster parents did not intend to pursue adoption. The mother retained a right to supervised visitation and was not required to pay child support.
The termination-of-parental-rights trial was held on June 19, 2012. On August 23, 2012, the juvenile court entered a judgment terminating the mother’s parental rights. The judgment reads, in pertinent part:
“The court does find, pursuant to Title 12-15-319, Code of Alabama, 1975, that [the mother is] unable to discharge [he]r responsibilities to and for the child[ ]; that the conduct and condition of [the mother is] such as to render [her] unable to properly care for the child, and that such conduct and condition [is] unlikely to change in the foreseeable future.
“[The mother has] failed to adjust [her] circumstances to meet the child’s needs, pursuant to Title 12-15-319, Code of Alabama, 1975 and Title 12-15-301, Code of Alabama, 1975.
“The court also finds that there are no suitable relative resources willing or able to receive custody of the child[]. The court finds there is no viable alternative to termination of parental rights in this case.”
The mother filed a motion to alter, amend, or vacate the judgment on August 28, 2012, arguing that DHR had not provided clear and convincing evidence demonstrating that the mother’s parental rights should be terminated or that maintaining the status quo was not a viable alternative; she also argued that the date of the trial was incorrectly stated in the judgment. On August 29, 2012, the juvenile court rendered an order granting the mother’s postjudgment motion in part by correcting the date of the trial; in all other *795 respects, it denied the mother’s motion. The order was not entered on the State Judicial Information System (“SJIS”) Case Detail Sheet. The mother filed an amended postjudgment motion seeking the termination of her parental responsibilities on September 6, 2012.[6] The juvenile court rendered an order denying the mother’s amended postjudgment motion on September 11, 2012; that order was not entered in SJIS. The mother filed a notice of appeal on September 10, 2012.
The juvenile court’s orders on the mother’s postjudgment motions were not entered in SJIS as required by Rule 58(c), Ala. R. Civ. P. See Rule 1(A), Ala. R. Juv. P. However, because the juvenile court had timely rendered its orders pursuant to Rule 58(a)(l)-(4), Ala. R. Civ. P., the orders on the mother’s postjudgment motions were not denied by operation of law on the 14th day after their filing. See Committee Comments to the Amendment to Rule 59.1, Ala. R. Civ. P., effective October 24, 2008. On remand from this court, the juvenile-court clerk entered the August 29, 2012, and the September 6, 2012, postjudgment orders in SJIS. The mother’s appeal became effective when the juvenile-court clerk entered the rulings in SJIS on May 22, 2013. See Rule 4(a)(4), Ala. R.App. P. (“A notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after the entry and on the date thereof.”).
The mother seeks our review of two issues: whether the juvenile court’s findings of fact are supported by clear and convincing evidence and whether the juvenile court failed to consider a continuation of the status quo as a viable alternative to the termination of the mother’s parental rights to the cjiild.
A juvenile court’s judgment terminating parental rights must be supported by clear and convincing evidence. Bowman v. State Dep’t of Human Res., 534 So.2d 304, 305 (Ala.Civ.App.1988). “Clear and convincing evidence” is “ ‘[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.’ ” L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002) (quoting Ala.Code 1975, § 6-ll-20(b)(4)).[7]
At the termination-of-parental-rights trial, the mother testified that she had completed a parenting class in 2009, that she had submitted to a psychological evaluation, and that she had maintained housing for three years in an apartment provided by “the government.” The mother said that she had participated in, but had never completed, counseling. She admitted that she did not provide support for the child, and she testified that she did not have any income because she was not able to obtain employment. According to the mother, she could not work because she was disabled.[8] The mother admitted that she had not informed DHR that she was pregnant with the child, but she testified that she had been unaware that she was pregnant because symptoms of a severe abdominal *796 hernia had masked the signs of pregnancy. The mother further testified that until March 2012 she had visited the child twice a month, but she admitted that she had not visited the child since that time. According to the mother she had not exercised her supervised visitation with the child because the telephone number and address for DHR had changed and she did not have DHR’s contact information.
Heather Shugart, a DHR employee, testified that DHR had mailed a letter to the mother during the last week of April 2012 to inform the mother of DHR’s change of address and telephone number as of May 10, 2012. Shugart said that the mother had not visited the child in the six weeks preceding the termination trial; she said that the mother’s last visit with the child occurred on May 8, 2012. Shugart admitted that the mother had completed one series of parenting classes, but, although the mother had been required to “redo it after the birth of [the child],” she had not completed the second series of parenting classes. She confirmed the mother’s testimony that she had participated in but had never completed counseling. Shugart admitted that the mother had submitted to a psychological evaluation and that the mother’s apartment was organized and clean, although she testified that the mother had also lived in two unsuitable places since the child was born. Shugart testified that she had brought the child to the mother’s apartment for “therapeutic visits.” Shugart explained that at those visits she would “coach” the mother and teach her appropriate ways to care for the child. She said that child would cry and need care. When asked how much she had to coach the mother, Shugart said: “Not a whole lot.” Shugart said that the child had a genetic disorder that required the care of an orthopedic physician every three to six months and that the mother had not “take[n] the initiative” to become involved in the child’s treatment, but Shu-gart admitted that she had not informed the mother of the dates of the child’s medical appointments.
Shugart testified that the mother’s parental rights should be terminated because the child had medical issues and because the mother lacked financial stability and did not have transportation. She said she was concerned because the mother had been awarded only supervised visitation with the siblings and because the mother’s credibility was “skewed” due to her unwillingness to inform DHR that she was pregnant with the child.
At the close of the trial, the juvenile-court judge orally stated:
“All right. I want to thank you all and I will get an order to you. I will — I want to say something about this case. I haven’t quite made up my mind, but I will say that I think it would have helped me to have some medical records on your client, if there are any. And it would have helped me to have a psychological evaluation. I didn’t have any of that.
“Judges we rule on what we get. I have tried to sit here and think what would be going on with you. It looks to me like incredible passivity like just — I don’t know. I don’t understand it, but the children are getting older and older. It’s an unusual case. But not — you know, it is. It’s just kind of — very often, I try to understand what’s going on with a parent. I just don’t get it here.”
The grounds for termination of parental rights are set out in § 12-15-319(a), Ala. Code 1975, which provides 12 factors that a juvenile court must consider when determining whether a parent is unable or unwilling to discharge his or her parental responsibilities. In this case, the juvenile court terminated the mother’s parental rights, relying exclusively on § 12-15-S19(a)(12), which provides in its entirety:
*797 “(a) If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following:
[[Image here]]
“(12) Lack of effort by the parent to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.”
Thus, we must determine whether the juvenile court was presented with clear and convincing evidence to support the judgment terminating the mother’s parental rights to the child based upon § 12-15-319(a)(12). “The party seeking to terminate parental rights must present clear and convincing evidence that the parent is not capable of or is unwilling to discharge his or her parental responsibilities.” K.W. v. J.G., 856 So.2d 859, 874 (Ala.Civ.App.2003) (citing V.M. v. State Dep’t of Human Res., 710 So.2d 915, 919 (Ala.Civ.App.1998)).
“This court fully recognizes the difficulty of cases such as this. Nevertheless, the termination of parental rights is a drastic measure, and we know of no means by which those rights, once terminated, can be reinstated. The evidence in these cases ‘does not rise to the level of being so clear and convincing as to support termination of the parental rights of the mother, such action being the last and most extreme disposition permitted by statute.’ East v. Meadows, 529 So.2d 1010, 1012 (Ala.Civ.App.1988). See also L.A.T. v. State Dep’t of Human Resources, 588 So.2d 471 (Ala.Civ.App.1991).”
V.M., 710 So.2d at 921; see also A.H. v. Houston Cnty. Dep’t of Human Res., 122 So.3d 846 (Ala.Civ.App.2013.)
We conclude that the juvenile court was not presented with evidence, “competent, material, and relevant in nature,” from which it could have been clearly convinced that the mother was unable or unwilling to discharge her parental responsibility to the child or that her conduct or condition rendered her unable to properly care for the child and that her conduct or condition was unlikely to change in the foreseeable future. See § 12-15-319(a).
DHR failed to present evidence indicating that the mother was unwilling to parent the child or describing the conduct or condition that made the mother unable to parent the child. In other words, DHR never revealed the mother’s parenting defect. Although we understand that, according to DHR, at some point in 2008 the mother failed to protect K.F., our review of the record reveals no evidence presented to the juvenile court that supports DHR’s assertion regarding K.F. Even assuming that DHR’s assertion is correct, the record contains no evidence presented by DHR regarding the mother’s inability or unwillingness to discharge her parental responsibility to the child. DHR failed to present evidence indicating that the mother had failed to protect the child, was unwilling to protect the child, or had a *798 continuing relationship with the man who had allegedly harmed K.F. in 2008.[9]
Likewise, we have not discovered evidence indicating that any conduct or condition of the mother would render her unable to parent the child. Accordingly, there is no evidence indicating that any conduct or condition that renders the mother unable to parent the child, if such exists, is unlikely to change in the foreseeable future.
Furthermore, DHR did not provide the mother the opportunity to correct any conduct or condition that might have been a barrier to reunification with the child; the mother was not informed of any “circumstance” she needed to adjust in order to meet the needs of the child. On September 15, 2011, when the child was five months old and had never lived with the mother, Judge Barclay relieved DHR of making reasonable efforts to rehabilitate the mother.
“A parent’s parental rights cannot be terminated on the ground that the parent did not adjust his or her circumstances to meet the needs of the children, or on the ground that efforts to rehabilitate the parent had failed, when the sole barrier to reunification was not communicated to the parent by DHR. See H.H. v. Baldwin Cnty. Dep’t of Human Res., 989 So.2d 1094, 1105 (Ala.Civ.App.2007) (opinion on return to remand) (Per Moore, J., with two judges concurring in the result) (‘The natural starting point in any fair and serious attempt to rehabilitate the parent and to reunite the parent with the child is identification of that characteristic, conduct, or circumstance that renders the parent unfit or unable to discharge his or her parental responsibilities to the child. Once DHR identifies the source of parental unfitness, the overarching goal of family reunification requires DHR to communicate its concerns to the parent and to develop a reasonable plan with the parent that is tailored toward the particular problem(s) preventing the parent from assuming a proper parental role.’).”
L.M. v. Shelby Cnty. Dep’t of Human Res., 86 So.3d 377, 388 (Ala.Civ.App.2011).
DHR failed to present clear and convincing evidence that would satisfy the requirements of § 12-15-319(a). Therefore, the juvenile court could not have properly determined that subsection (12) of that statute was an appropriate provision on which to base the termination of the mother’s parental rights. The judgment of the juvenile court is therefore reversed, and the cause is remanded for further proceedings.
Because we find the resolution of the mother’s first argument on appeal determinative of the appeal, we pretermit discussion of the mother’s argument that the continuation of the status quo was a viable alternative. See Favorite Mkt. Store v. Waldrop, 924 So.2d 719, 723 (Ala.Civ.App.2005) (stating that this court would preter- *799 mit discussion of further issues in light of dispositive nature of another issue).
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. The parental rights of the child's unknown father were also terminated.

. At the time of the termination-of-parental-rights trial regarding the child, R.O. was in foster care and K.F. was in the custody of his father. The mother’s parental rights to the siblings were not terminated.

.Apparently, some of the proceedings below were conducted in conjunction with the proceedings relating to the siblings.

. DHR alleged that the mother had not visited the child since May 2011 and that it had been difficult to contact the mother regarding visitation. However, in its report dated November 18, 2011, DHR reported that the mother's visitation rights had been “suspended” on May 18, 2011. In its report dated February 9, 2012, DHR reported that the mother had exercised her visitation rights with the child "at least once per month at the DHR Building.” We note that the September 14, 2011, order reads: "The terms of visitation may not be changed in an [Individualized Service Plan]”; the record does not contain any court orders suspending or reinstating visitation. However, the juvenile court did not base its termination of the mother’s parental rights on the mother's alleged failure to maintain regular visits with the child. See § 12 — 15— 319(a)(10), Ala. Code 1975.

. The order indicates that the hearing was a permanency hearing and a "TPR — pre-TRIAL” regarding R.O. and the child.

. See Ex parte M.D.C., 39 So.3d 1117 (Ala. 2009) (holding that a judgment terminating a parent's parental rights does not also extinguish that parent’s parental responsibilities, such as, for example, the duty to support the child).

. See also Ex parte Mclnish, 47 So.3d 767 (Ala.2008) (explaining the standard of review to be used in evaluating whether the clear- and-convincing-evidence burden of proof has been met).

.The mother offered documentary evidence indicating that she had applied for disability benefits, but she testified that she had not yet been approved to receive disability benefits.

. We have affirmed judgments terminating the parental rights of a parent when a parent has failed or refused to remove himself or herself from a living situation that presented a danger to the parent’s child. See C.W. v. State Dep’t of Human Res., 826 So.2d 171, 173-74 (Ala.Civ.App.2002). However, because there is no evidence indicating that the mother is in a continuing relationship with the man who allegedly harmed K.F., we find no conflict between the holdings in this opinion and previous decisions of this court. See L.M. v. Shelby Cnty. Dep't of Human Res., 86 So.3d 377, 387-88 (Ala.Civ.App.2011) (determining that the record did not contain evidence sufficient to support a finding that the father was unwilling to protect the children from the potential harm presented by another person).